**SUN THEATRE CORP.**

v.

**RKO RADIO PICTURES, Inc.**

**Nos. 10934, 10952.**

United States Court of Appeals Seventh Circuit.

April 6, 1954.

As Amended April 22, 1954.

285

Seymour F. Simon, Sheldon O. Collen, Chicago, Ill., for appellant.

David A. Watts, Malcolm A. Chandler, Chicago, Ill., amici curiæ.

Edward R. Johnston, Samuel W. Block, Leon Fieldman, Chicago, Ill., Miles G. Seeley, Bryson P. Burnham, Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

On February 7, 1952, plaintiff, owner and operator of the Wheaton Theatre, Wheaton, Illinois, brought suit against defendants RKO Radio Pictures, Inc., Paramount Pictures, Inc., Paramount Film Distributing Corporation and Balaban & Katz Corporation, hereinafter referred to as defendants or as RKO, the Paramount defendants and B & K respectively, and others, under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, to recover damages for injuries allegedly sustained by reason of defendants' violation of the antitrust laws, 15 U.S. C. § 1 et seq., during the period from April, 1941 to January 1, 1948.

The complaint was in four counts. Counts I and II charged monopolistic practices by defendants in restricting first and subsequent runs[1] of motion pictures to certain favored theatres located in Chicago, averred that defendants had conspired to establish a system of unreasonable clearances[1] to the injury of plaintiff and prayed for treble damages. To avoid the consequences of our decisions in Hoskins Coal & Dock Co. v. Truax Traer Coal Co., 7 Cir., 191 F.2d 912, certiorari denied 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704, and Schiffman Bros. v. Texas Co., 7 Cir., 196 F.2d 695, that such an action is within the Illinois two year statute of limitations, counts III and IV were alternative in character, praying single damages on account of the same acts complained of in counts I and II. Defendants filed answers pleading, inter alia, the bar of the two year statute of limitations, Ill.Rev.St. (1951) c. 83, § 15.

Thereafter, defendants moved for summary judgment on all counts, aver-

---

[1]. Defined, United States v. Paramount Pictures, Inc., 334 U.S. 131, 144–145, note 6, 68 S.Ct. 915, 92 L.Ed. 1260.

ring the statutory bar, and, alternatively, as to counts III and IV, for judgment on the pleadings on the ground that they failed to state a cause of action under the Act. On March 25, 1953, the court entered final judgment in favor of defendants. Thereafter, on April 23, 1953, on plaintiff's motion, the judgments were vacated as to all defendants except B & K, and the motions of defendants RKO and the Paramount defendants continued to permit the introduction in evidence of consent decrees entered against said defendants and certain other documents from the record of United States v. Paramount Pictures, Inc., Equity No. 87–273, pending as to certain parties other than defendants in the District Court for the Southern District of New York when the action at bar was filed. After further hearing and receipt of the documents in evidence, the trial court again granted defendants' motions and entered final judgment in their favor on July 3, 1953.

Errors assigned go to the questions of whether an action for single damages will lie and whether plaintiff's claim is barred by the two year statute. Plaintiff contends, also, that the Hoskins and Schiffman cases were erroneously decided and should be reconsidered.

We turn first to plaintiff's contention that it is entitled to sue for single or actual damages under Section 4 of the Act and thus escape the bar of the two year statute of limitations applicable to actions for treble damages. Our inquiry in this respect, therefore, is whether the remedy afforded by the Act is damages, which may be trebled by way of penalty, or treble damages, with the damage actually sustained being merely the yardstick by which the remedy is to be measured. It is well to note, at the outset, as bearing not only on this issue but on arguments addressed throughout plaintiff's brief to public policy considerations as affecting the question of limitation of actions, the decades of silence by Congress as to limitations as indicative of its intention that a plaintiff, to prevail, must satisfy the requirements of the applicable state statute.

We find no persuasive authority which has considered this question. The court, in Haskell v. Perkins, D.C., 28 F.2d 222, considering itself faced with [2] this question, held that an action for treble damages under Section 7 of the Sherman Act did not survive the death of the wrongdoer but permitted the recovery of actual damages. This decision, however, is based on a pure assumption that the Act permitted the recovery of single damages, since the court addressed itself solely to the question of survival of the treble damage action.

We are constrained, then, to treat the question as one of first impression. Whatever plaintiff's rights may be, they exist solely by virtue of the statute, as no right to recover treble damages was known to the common law. Decorative Stone Co. v. Building Trades Council, 2 Cir., 23 F.2d 426, certiorari denied 277 U.S. 594, 48 S.Ct. 530, 72 L.Ed. 1005; Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236. Section 4 provides that any person "injured in his business or property" by any act forbidden "may sue therefor * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." Our determination as to the remedy afforded thereby must find its basis in the interpretation to be given the quoted language. In solving this question we must resolve all permissible doubts in favor of plaintiff, Bruce's Juices, Inc., v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219, but we may not, under the guise of interpretation, usurp the powers of the legislature.

2. Plaintiff's cause of action depended on proof of the existence of a contract between himself and one Duke. The Court of Appeals held that plaintiff had not sustained the basic burden of proof and had no cause of action under any theory. Perkins v. Haskell (Haskell v. Perkins), 3 Cir., 31 F.2d 53, certiorari denied 279 U.S. 872, 49 S.Ct. 513, 73 L.Ed. 1007.

Keeping this guiding principle in mind, can we say that the remedy afforded by Section 4 is damages, with a super-added trebling penalty? Unless we can, plaintiff's contention must fail. Plaintiff argues that its remedy is damages; that the extent of the recovery permissible is threefold the damages, and that, in suing for single damages, it is merely foregoing a portion of the recovery. This apparently conforms to the basic assumption by the court which formed the foundation for the decision in the Haskell case. However inviting the prospect of assuming that which we are called upon to decide, we must follow the more difficult course which requires something deeper than a play on words which divorces the remedy from the recovery and, in essence, reduces the issue to that of remittitur.

■ The statute is explicit; the only remedy provided therein is "threefold the damages" sustained. Giving to this language its plain meaning, we think the only permissible interpretation is that the remedy afforded is treble damages, penal in nature and susceptible therefore to all restrictions surrounding an action of such nature. The remedy has been so treated by this court in Bigelow v. RKO Radio Pictures, Inc., 7 Cir., 150 F.2d 877, reversed on other grounds 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, wherein the court said, 150 F.2d at page 883: "The amount of this verdict was required by statute to be trebled by the judgment. In this respect neither the jury nor either court had any discretion. The verdict should represent actual damages sustained, and two thirds of the judgment is a penalty which Congress has seen fit to impose * * *." Furthermore, any doubt as to the intention of Congress, and we are of the opinion that the plain language of the Act admits of none, must fade away in the light of the remarks of Senator Hoar, sponsor in the Senate of the Sherman Act which first created a private right of action under the anti-trust laws. The Senator submitted Section 7 of the Act to the Senate as a

" 'section establishing a penalty, three-fold damages'." Quoted without citation, 28 F.2d at page 223.

■ Thus the amount of actual damage is a fact, which, when proved, becomes the yardstick on which the judgment is measured. See also, McKean v. Hillman, 2 N.J.Super. 131, 64 A.2d 899, affirming a judgment holding the treble damage provisions of the Emergency Price Control Act of 1942 to be the exclusive remedy for rent overcharges; Illinois & S. L. R. & Coal Co. v. People, 19 Ill.App. 141. That plaintiff may not alter a remedy which exists solely by virtue of a statute is a principle too well settled to require citation of authority. The remedy is the same regardless of the prayer of a complaint, and plaintiff may not do away with the limitations of the statute on which he relies by his pleading. The single damage counts were properly dismissed.

Plaintiff contends, with support in briefs filed by *amici curiae*, that we should reconsider our decisions in the Hoskins and Schiffman cases, that an action under Section 4 of the Act is governed by the Illinois two year statute. It is urged that we overlooked the postulate announced in Bell v. Farwell, 176 Ill. 489, 52 N.E. 346, 42 L.R.A. 804, and other cases in Illinois, that, for purposes of the application of Illinois law, the courts of that state accept whatever characterization is placed on a statutory cause of action by the courts of the jurisdiction enacting the statute. Applying this rule, it is said that the courts of Illinois would find, on authority of Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, the remedy of treble damages provided by the Act to be remedial and, therefore, not governed by the two year statute.

■ This argument is premised on a misapprehension of what was decided in Hoskins and Schiffman. As we said in the latter, "We pointed out [in Hoskins] that the real question facing us * * * was not whether the action was one to recover a statutory penalty within the

meaning of any federal statute but whether actions such as this are limited to a period of two years under the Illinois statutes, *i. e.*, whether actions to recover treble damages must be commenced in Illinois within two years. It is of no significance that the cause of action arises under federal statutes." 196 F.2d at page 696. This postulate refutes the basic premise on which plaintiff and amici rely, namely, that those cases look to the state law to characterize the action as penal or remedial. These decisions are but a necessary consequence of the basic principle that statutes of limitation affect the remedy merely, not the substantive right.

Extended discussion of the cases relied on is unnecessary. The basic issue in Bell v. Farwell, supra, was one of public policy, *i. e.*, whether an Illinois court would entertain the cause, viz., whether the applicable statute of the State of Kansas was penal or remedial. This question was resolved in accord with applicable decisions of the Supreme Court of Kansas, and, applying the familiar doctrine of comity, the court held that the action would lie. In Emerson v. North American Transp. & Trading Co., 303 Ill. 282, 135 N.E. 497, 23 A.L.R. 1, the court was concerned only with the question as to when a cause of action accrued and the statute of limitations began to run against a claim based on a demand deposit certificate executed in Alaska. We are not, however, concerned, as contended, with a like question of conflict of laws, but, as we pointed out at page 696 of 196 F.2d in the Schiffman opinion, with a question of procedure, namely, what Illinois Statute limits the prosecution of a cause of action for treble damages and attorney's fees. Irrespective of the tag affixed to a statutory cause of action, if we find that it falls within that category of suits which the courts of the state hold to be limited by the two year statute, our inquiry comes to an end. As we indicated in Hoskins, 191 F.2d at page 914, this principle is in accord with Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241. See also, Leonia Amusement Corp. v. Loew's Incorporated, D.C., 117 F.Supp. 747.

Plaintiff refers to several recent cases which are said to criticize Hoskins and Schiffman. However, the courts, in Electric Theater Co. v. Twentieth Century-Fox Film Corp., D.C., 113 F.Supp. 937; Florida Wholesale Drug, Inc., v. Ronson Art Metal Works, D.C., 110 F.Supp. 573; Reid v. Doubleday & Co., D.C., 109 F.Supp. 354; and Leonia Amusement Corp. v. Loew's Incorporated, supra, were careful to emphasize that the Illinois statute required a result different from that reached by the trial court in each of those cases. The courts which have taken issue with Hoskins and Schiffman have, like plaintiff and amici in their briefs and argument, done so through a misapprehension of what we decided. Fulton v. Loew's Incorporated, D.C., 114 F.Supp. 676; Wolf Sales Co. v. Rudolph Wurlitzer Co., D.C., 105 F.Supp. 506. After careful consideration of the briefs and argument of plaintiff and amici on this issue, we are still of the opinion that Hoskins and Schiffman were correctly decided and are controlling. Plaintiff's cause is barred as to defendants, absent a showing that the statute was tolled.

Plaintiff insists, however, that defendants may not, under the circumstances of this case, rely on the statute of limitations. It argues that, under the provisions of the second paragraph of Section 5 of the Clayton Act, the pendency of the Paramount case, an antitrust action brought by the United States against the major figures in the motion picture industry, suspended the running of the statute against plaintiff's claim until a date within two years prior to February 7, 1952 when its complaint was filed. Because of facts subsequently related, plaintiff's positions with respect to RKO and the Paramount defendants on the one hand and B & K on the other are quite divergently different. There is, however, an underlying public policy argument which is generally ap-

plicable to each argument advanced on the suspension issue. Due to the highly technical nature of the subject matter, we have thought it advisable to examine the provisions of Section 5 in their entirety before proceeding to consider arguments addressed to the effect of that Section on plaintiff's cause against the individual defendants.

Section 5 provides that:

"A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto * * *.

"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof." 15 U.S.C.A. § 16.

Reduced to essentials, we construe the premises underlying plaintiff's argument as follows: 1. Section 4 of the Clayton Act, providing a right of action for damages to private persons injured by a combination in violation of the antitrust laws, was designed by Congress to be a means of enforcing those laws; Bruce's Juices, Inc., v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219; Maltz v. Sax, 7 Cir., 134 F.2d 2, certiorari denied 319 U.S. 772, 63 S.Ct. 1437, 87 L.Ed. 1720; 2. Section 5 was designed to effectuate this purpose by, (a), permitting private parties to utilize as evidence a judgment in an action prosecuted successfully by the United States involving in whole or in part the same subject matter as that complained of in the private suit, and, (b), suspending the running of the statute of limitations during pendency of the government's suit in order to guarantee to an injured party the full benefit of findings adduced therein; and, 3. Ergo, Section 5 operates to preserve to an injured party his right of action against all parties to the unlawful conspiracy against the bar of the statute of limitations until the full period of limitation has elapsed after a government antitrust action shall have been finally determined as to all defending parties. Thus it is argued that conclusion (3) must follow unhesitatingly from the policy considerations enunciated in premises 1 and 2.

A hypothetical examination of the facts of the case at bar, carried to its logical conclusion in the light of the provisions of those sections and the judicial authority construing them, will illustrate the fallacy of the conclusion. In 1938 the United States filed a civil action, U. S. v. Paramount, et al., against the major companies of the picture industry. The complaint charged A, B, C and D with conspiring together to eliminate competition in the exhibition of pictures in violation of the antitrust laws, 15 U.S.C.A. § 1 et seq., by establishing a nationwide system of unreasonable runs and clearances governing the licensing of films for exhibition. This litigation, which resulted in a decree against all defendants, was finally terminated as to all on February 7, 1952, when a decree was entered against Loew's Incorporated.

A complaint filed by P, the owner of a suburban theatre, alleges that he was injured by a conspiracy of A, B, C, D and E, the latter being the local exhibitor who controls all first run theatres in the downtown section of the metropolitan area in which P's theatre is located. It is averred that under the system of classification of theatres adopted

by the local conspirators, P was denied access to new films until some two months after termination of the downtown first run and, even then, was forced, by reason of unreasonably delayed clearances, to charge a severely restricted admission price. Section 4 gives him a right of action against every person who participated in the conspiracy to his injury.

The impact of Section 5 on this right of action must be determined with reference to what action, if any, the United States has taken to punish or enjoin the unreasonable combination. Although that section inures to P's benefit when the government has acted, no restraint is imposed on his conduct; he may file his action for damages at will without regard to what the government has done. If however his cause is heard before the government's case was filed, or before that action has been determined in favor of the government, P has the burden of proving every element of his case. Thus he must prove the existence of the combination in violation of the Act and how and to what extent he has been injured. Insofar as the injury is occasioned by the national conspiracy, as contrasted with activities of the local combine, this too is an element of P's burden of proof. He can derive no benefit from the pendency of the government's suit until a final decree has been entered therein. Fifth & Walnut, Inc., v. Loew's Incorporated, D.C., 76 F.Supp. 64, affirmed 2 Cir., 176 F.2d 587, certiorari denied 338 U.S. 894, 70 S.Ct. 242, 94 L.Ed. 549.

█ If, however, P awaits the outcome of the government suit before filing his action, he will receive the evidentiary benefits provided by Section 5. While we are concerned with the tolling provisions of the second paragraph of that Section only, the two paragraphs are complementary and must be construed together, Fifth & Walnut, Inc., v. Loew's Incorporated, supra, and it is well, therefore, to spell out the benefit provided by the first paragraph. This provision makes a judgment against a defendant admissible against "such defendant", in a private action for damages, as prima facie evidence of such matters only as are necessarily decided in a government suit. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534. If a decree is entered that A, B, C and D have conspired together on a national scale to eliminate competition, this decree is admissible in P's action as prima facie proof of the nationwide conspiracy, but not to prove the existence of a conspiracy directly affecting any particular locality. Emich Motors Corp. v. General Motors Corp., supra; Theatre Enterprises v. Paramount Film Distributing Corp., 4 Cir., 201 F.2d 306, affirmed 346 U.S. 537, 74 S.Ct. 257; DeLuxe Theatre Corp. v. Balaban & Katz Corp., D.C., 95 F.Supp. 983, or to prove the fact of P's injury. Monticello Tobacco Co. v. American Tobacco Co., 2 Cir., 197 F.2d 629, certiorari denied 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 678.

Thus, in the Theatre Enterprises case, the trial court instructed the jury, *inter alia*, with respect to the effect of the decree in U. S. v. Paramount, " 'There was not before the Court (in the Paramount case) the present factual situation which is before you now with respect to Baltimore theatres. Therefore, it is still necessary in the present case, in order for plaintiff to recover, for it to prove to your satisfaction by the weight of the credible evidence, that these defendants, or some of them, have conspired in an unreasonable manner to keep first run exhibitions from the plaintiff * * *.' " 201 F.2d at page 315. This was sustained on appeal.

In other words, the decisive issues in the government's suit and in P's case are different. The decree in the former merely lays the cornerstone on which P's case must be built. Though he may enjoy the benefit of Section 5, P still must prove the impact of the national conspiracy on his locality, the conspiracy of A, B, C, D and E to eliminate competition locally and how and to what extent he has been injured thereby. The

decree is not prima facie evidence, or even probative, of E's complicity in the unlawful combination. This result is in keeping with the plain language of that Section which restricts the prima facie effect to defendants in the government suit.

The second paragraph of that Section is designed to insure to injured parties the full fruits of the government's case by suspending during pendency thereof, the running of the statute against a right of action in favor of parties injured by the same acts. Although this paragraph does not speak in terms of defendants in a suit brought by the government, it suspends the running of limitations during pendency thereof "in respect of each and every private right of action * * * based in whole or in part on any matter complained of" therein. Neither logic nor public policy considerations demand, or even permit, us to say that the pendency of a government antitrust suit operates to suspend the running of the statute as to every party who participated, either locally or nationally, in the nationwide combination condemned thereby without regard to whether or not he was named therein as a defendant. Rather, the suspension provisions must be construed in the light of what can be accomplished thereby. Our hypothetical complaint charges and our hypothetical decree finds that A, B, C and D conspired together to eliminate competition on a national scale. The decree is prima facie evidence as to this question only. P reaps the full benefit of Section 5 if the statute is suspended as to the parties named. If a different result is desirable, provision for its promulgation is a function of the Congress, not of the courts.

What has been said should dispose of plaintiff's contention that pendency of the Paramount case suspended the running of the statute as to B & K, who was not a party to that cause. B & K, a former subsidiary of defendant Paramount, was, during the period when plaintiff's injury allegedly was incurred, the local exhibitor circuit which controlled first run theatres in the Chicago Loop. Almost without exception, the tolling provisions of Section 5 have been held inapplicable to parties not defendants in the government antitrust suit. Momand v. Universal Film Exchanges, D.C., 43 F.Supp. 996, affirmed, 1 Cir., 172 F.2d 37, certiorari denied 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118; Levy v. Paramount Pictures, Inc., D.C., 104 F.Supp. 787. Cf., Don George, Inc., v. Paramount Pictures, D.C., 111 F.Supp. 458. It has been held that U. S. v. Paramount was not pending against a wholly owned subsidiary of Paramount, Christensen v. Paramount Pictures, D. C., 95 F.Supp. 446, or against an affiliate of Twentieth Century-Fox, Electric Theater Co. v. Twentieth Century-Fox Film Corp., D.C., 113 F.Supp. 937, who were not themselves named defendants therein.

It is necessary, however, to consider briefly plaintiff's first alternative proposition. Plaintiff relies on Homewood Theatre, Inc., v. Loew's Incorporated, D. C., 110 F.Supp. 398, to support the basic premise on which its position depends, viz., that the Paramount decree is admissible as prima facie evidence against B & K, and, therefore, the running of the limitation statute was suspended. We do not read this case as authority for the argument. In an action for treble damages against a number of defendants, Homewood urged that the decree in the Paramount case was prima facie evidence against defendant Minnesota Amusement Company, although that Company was not a defendant in the government cause. The court expressly refrained from ruling on that question. Thus it stated 110 F.Supp. at page 411, "As to this * * * contention, the court does not find it necessary to decide. Suffice it to state that the decrees, being admissible as to all of the distributor defendants, they constitute prima facie evidence as to them, and the Minnesota Amusement Company being a beneficiary and a part of the local conspiracy, which is a part of the national conspiracy, it cannot object to the ad-

mission of such evidence in that it having knowingly joined the conspiracy here, all acts of the conspirators in furtherance of the conspiracy necessarily are admissible as to it." Thus the court, correctly we think, denied prima facie effect to the decree except as to parties to the Paramount case.

▆▆▆ We are of the opinion that Section 5 operates to toll the running of limitations during pendency of a government antitrust suit only as to named defendants, and that in the present case running of the Illinois statute was never tolled as to B & K by pendency of U. S. v. Paramount.

A question is presented as to whether the statute of limitations was tolled as to RKO and the Paramount defendants until U. S. v. Paramount was finally determined in 1952. Both were named defendants therein; consent decrees were entered therein against each; and each was severed from the cause more than two years before the complaint was filed in the case at bar. Defendants contend that the statute of limitations commenced running as to each of them when the respective consent decrees were entered. Plaintiff's position is twofold. Thus we must determine, 1. whether the Paramount case continued to pend against these defendants, thus tolling the statute of limitations as to them, until the cause was determined as to all defendants, notwithstanding the prior entry of the consent decrees; and 2. whether, if the consent decrees are held to be final, that action was nevertheless pending against said defendants within the meaning of Section 5 in view of the various orders entered subsequently thereto modifying those decrees in certain respects.

The first contention has been urged and rejected by the courts in at least three well considered decisions by district courts. Barnett v. Warner Bros. Pictures Distributing Corp., D.C., 112 F.Supp. 5; Alex Theatre Corp. v. Balaban & Katz Corp., CCH 1952 Trade Cases, Par. 67,357; Manny v. Warner Bros. Pictures, Inc., D.C., 116 F.Supp.

807. In the Barnett case the court said of the consent decrees against these defendants in U. S. v. Paramount, "It is the opinion of the court that the pendency of a government suit ends (1) when final judgment has been entered after trial and appellate proceedings are concluded, or (2) when final judgment is entered by consent of the parties. Any other construction of Section 5 would lead to long, and in some instances permanent suspensions of all statutes of limitations. Congress could not have intended such a result." 112 F.Supp. at page 7. The court held that the statute of limitations began to run against RKO and the Paramount defendants as of the date when consent decrees were entered against the respective defendants in the government's suit. See also, similar language in Manny v. Warner Bros. Pictures, Inc., supra, 116 F.Supp. at page 809.

We think these decisions embody the correct interpretation of the Act. Plaintiff concedes that the two paragraphs of Section 5 are complementary. As previously demonstrated, no public policy considerations require that the tolling provisions be more extensive than the evidentiary provisions which they are designed to protect. The consent decrees against the RKO and the Paramount defendants were essentially final in character. From the date of their entry the complaints of the government against the respective defendants were terminated. At that time the purpose of the tolling provisions had been served, and, logically, the statute of limitations commenced to run. To hold that the statute is tolled as to all defendants in a government suit until that suit is terminated as to every defendant would result only in placing a premium on dilatoriness and stale litigation.

No authority is cited, and we have found none, which militates against this. In pertinent part the decision in Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 194 F.2d 846, certiorari denied 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348, involved only

the question whether U. S. v. Paramount was pending against certain defendants between the date of the entry of a blanket consent decree on November 20, 1940, and August 7, 1944, when the United States moved for trial. That decree was held to be interlocutory, whereas the decrees with which we are confronted terminated the cause as to the defendants named therein.

The conclusion we reach does not impinge upon the salutary role which self-interest, through private litigation, is designed to play in enforcing the antitrust laws. Bruce's Juices, Inc., v. American Can Co., 330 U.S. 743, 67 S. Ct. 1015, 91 L.Ed. 1219; Maltz v. Sax, 7 Cir., 134 F.2d 2, certiorari denied 319 U.S. 772, 63 S.Ct. 1437, 87 L.Ed. 1720. At any time within two years after these consent decrees were entered, plaintiff might have filed its action against the said defendants, taken advantage of the decrees as evidence supporting its claim and recovered three times the amount of damage proved. Under the Act all conspirators are liable for injury to private persons both jointly and severally. By the same token it may now recover its full measure of damages from defending parties as to whom the statute of limitations imposes no bar.

Plaintiff's reliance on modifying orders entered subsequent to entry of these consent decrees to support its contention that the Paramount case continued to pend against RKO and the Paramount defendants after decrees were entered as to them is, we think, misplaced. We think it unnecessary to consider those decrees in detail. Suffice it to say defendants were continuously enjoined from certain concerted practices relative to imposition of unreasonable runs and clearances and were required to divest themselves of certain exhibition properties, thus divorcing exclusive control of motion picture exhibition activities from production and distribution. Each decree reserved jurisdiction to enforce, and, to that end, to modify it as changing conditions might require. Pursuant to this reservation, orders as recent as January 2, 1951, were entered from time to time modifying the judgments in certain respects.

Irrespective of pendency of the cause, and of the reservation of jurisdiction, no one will dispute the inherent power of a court of equity to enforce its decree. In the language of Mr. Justice Cardozo, in United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999, "We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions though it was entered by consent. * * * If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."

If we should adopt the rule for which plaintiff contends, pendency of the Paramount case as to consenting defendants would be coextensive with the power of the court to enforce its decree, encompassing an indefinite period of time with no foreseeable limits. So construed, Section 5 might, as defendants suggest, suspend the running of statutes of limitations forever. The mere statement of this proposition illustrates its fallacy. Had Congress intended to deny the benefit of limitation statutes to violators of the antitrust laws, that intention would have been clearly expressed. If we cannot imply that general intent, we should not presume that Congress intended that limitations be forever suspended as to the wrongdoer who is caught while the violator who evades detection may invoke their protection. The court's decree of injunction is no less final merely because from time to time expediting orders are necessary to effect its enforcement.

We conclude that the two year statute of limitations, although suspended originally as to RKO and the Paramount defendants by the pendency of U. S. v. Paramount, began to run in favor of these defendants when consent decrees were entered against them in

that case on November 8, 1948 and March 3, 1949 respectively. Plaintiff's claim is now barred.

The judgments are

Affirmed.