Sidney TAGUE, individually, and as Administrator of the Estate of Harry Tague, deceased, Plaintiff,

v.

Harry BALABAN, Elmer Balaban, John Balaban, H & E Balaban Corporation, a corporation of the State of Illinois, Joseph H. Feulner, Balaban & Katz Corporation, a corporation of the State of Delaware, Twentieth Century-Fox Film Corporation, a corporation of the State of New York, Paramount Film Distributing Corporation, a corporation of the State of New York, Warner Bros. Pictures Distributing Corporation, a corporation of the State of Delaware, and Loew's Inc., a corporation of the State of Delaware, Defendants.

No. 53 C 1539.

United States District Court
N. D. Illinois, E. D.

Nov. 6, 1956.

Horace Young, Chicago, Ill., for plaintiff.

Miles G. Seeley, Chicago, Ill., for Loew's Inc. and Warner Bros. Pictures Distributing Corp.

Samuel W. Block, Chicago, Ill., for John Balaban, Feulner, Balaban & Katz and Paramount Film Distributing Corp.

Fink & Miller, Chicago, Ill., for Elmer Balaban, Harry Balaban and H & E Balaban.

Springer, Bergstrom & Crowe, Chicago, Ill., for Twentieth Century-Fox Film Corp.

CAMPBELL, District Judge.

This is an action asserting alleged violations of the "Anti-Trust Laws of the United States", 15 U.S.C.A. § 1 et seq. It is alleged that the respective parties are, and have been, engaged in the business of exhibiting or producing and dis-

tributing motion picture films. The complaint was filed on July 10, 1953.

The matter is now before the Court on the defendants' motion to limit the plaintiff's proof of the alleged conspiracy. The controversy concerns itself with the query of what effect, if any, the pendency of the case entitled United States v. Paramount Pictures, Inc., 85 F. Supp. 881, in the United States District Court for the Southern District of New York, has on the applicable statute of limitations. This statute, Ill.Rev.Stat. 1951, c. 83, Sec. 15, limits the recoverable period of damages to the two years immediately preceding the filing of the instant complaint unless it can be shown that the pendency of the Paramount case, supra, under Section 5 of the Clayton Act, 15 U.S.C.A. § 16, suspended the running of the statute of limitations in this case. There is no dispute that as to each defendant, except Loew's Inc., the Paramount case has not suspended the running of the statute of limitations; with respect to Loew's, plaintiff argues that the Paramount case did suspend the running of the statute of limitations so as to include a period of damages extending beyond the date on which the Paramount case was filed. For the reasons expressed herein, the plaintiff's argument is manifestly untenable.

Under Section 5 of the Clayton Act, a prior suit brought by the United States to enforce compliance with any of the anti-trust laws, suspends, during the pendency thereof, the running of the statute of limitations in each and every private right of action arising under the anti-trust laws if said private action arises "in whole or in part on any matter complained of in said" prior suit instituted by the United States.

The crucial language of Section 5, so far as pertinent here, is the proviso that the private action must be based "in whole or in part on any matter complained of" in the prior Government suit. Thus considered and viewed against the instant complaint, the present action appears in no sense to be grounded upon the same matters of which the Govern-

ment complained in the Paramount case. The instant complaint does not allege that final decrees were entered against any of the defendants in the Paramount case; it is not alleged that the present action is based, in whole or in part, on the matters complained of in the Paramount case; nor is it alleged that, as a consequence, these prior decrees are admissible under Section 5 as prima facie evidence of the matters complained of in this case. Furthermore, it is not alleged that the instant defendants' actions are a part of any national scheme or conspiracy which might have an impact on the Chicago area. It is merely alleged in paragraphs 19, 20, and 21 of the complaint that the defendants entered into a conspiracy to fix prices and control the exhibition of motion pictures in the Chicago area in order to exclude exhibitors such as the plaintiff from competing with Balaban & Katz; that the defendants set up admission prices higher than plaintiff was able to charge and if plaintiff charged a price lower than that fixed by the defendant, no films would be made available to the plaintiff by the defendants; and that the defendants, in order to exclude the plaintiff from competing with Balaban & Katz, discriminated against the plaintiff by making choice film available to Balaban & Katz and preventing plaintiff from exhibiting such films when they were being shown at Balaban & Katz theatres. No overt acts or dates are specified except that the contents of two letters, dated August 8 and December 7, 1951, are set forth in paragraph 21. It is also worthy of note that the plaintiff fails to allege that the asserted conspiracy was a continuing one and fails to allege continuing damages; indeed, in this regard, no equitable relief, but merely damages, is sought.

 It is quite apparent, therefore, from even the most cursory examination of the instant complaint, that there has been no attempt to connect the matters complained of in the Paramount case with the violations charged in the instant case. If the matters of which the

plaintiff complains were a part, in any degree, of the violations charged in the Paramount case, then it was incumbent on the plaintiff to charge this with sufficient particularity so that this might be readily ascertained from a reading of the complaint and not from resort to guesswork or speculation on what the plaintiff did or did not intend. See Steiner v. 20th Century-Fox Film Corp., Court of Appeals, 9 Cir., 232 F.2d 190. The rules of pleading have not been reduced to the degree where the facts necessary, in whole or in part, to the plaintiff's case are left for surmise and conjecture. Finding no such similitude or duplication of charges between the Paramount case and the case at bar, I hold that under the instant complaint the plaintiff cannot avail himself of the advantages of Section 5 of the Clayton Act, 15 U.S. C.A. § 16. Therefore, the two-year period of damages applies to all of the instant defendants.

There is, however, an equally compelling reason that prompts my holding that the Paramount case has not suspended the running of the statute of limitations as to the defendant Loew's Inc. Counsel for the plaintiff argues that the Paramount case "ceased to pend" as to Loew's Inc. when a decree was entered against Loew's on February 7, 1952, a date well within two years prior to July 10, 1953 when the instant complaint was filed. Counsel for Loew's argue that, as to Loew's, the Paramount case "ceased to pend", for purposes of Section 5, either on June 5, 1950, or on October 16, 1950, both dates being sufficiently beyond two years prior to July 10, 1953. On June 5, 1950, the Supreme Court, Loew's, Inc., v. U. S., 339 U.S. 974, 70 S.Ct. 1031, 94 L.Ed. 1380 affirmed the decree entered against Loew's on February 8, 1950, and on October 16, 1950, the Supreme Court, 340 U.S. 857, 71 S.Ct. 69, 95 L.Ed. 627 denied Loew's a rehearing. Both the February 8, 1950 and February 7, 1952 decrees have been presented to the Court and marked as exhibits A and B, respectively.

In support of his contention, plaintiff's counsel relies almost entirely on a statement taken from Sun Theatre Corp. v. R.K.O. Radio Pictures, 7 Cir., 213 F. 2d 284. In this opinion, Judge Lindley states at page 289:

"This litigation [United States v. Paramount], which resulted in a decree against all defendants, was finally terminated as to all on February 7, 1952, when a decree was entered against Loew's Incorporated."

Observing, but not deciding, that there might be a substantial difference in meaning between the word "terminated" and the word "pendency" as the latter word is used in Section 5 of the Clayton Act, and considering that any statement in the Sun case to the effect that the Paramount case ceased to pend as to Loew's on February 7, 1952 would be *obiter dicta*, a study of the February 8, 1950 and February 7, 1952 decrees would seem to me to be the most logical and intelligent manner in which to approach the problem presented.

The 1950 decree was entitled "Final Decree". Its purpose was to adjudicate the issues that were left open on remand to the District Court by the Supreme Court's 1948 decision, United States v. Paramount, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, which affirmed in part and reversed in part the District Court's 1946 decree. 70 F.Supp. 53. The 1950 decree dismissed certain claims and specifically enjoined Loew's, and the other defendants, from performing certain acts in the conduct of their businesses. The decree further provided for Loew's and the Government to submit plans of divorcement and divestiture in order for Loew's to accomplish "the ultimate separation of its distribution and production business from its exhibition business", Ex. A, Section IV, Par. 1, sufficient to satisfy the requirements of the 1948 Supreme Court decision. Under the 1950 decree, the District Court retained jurisdiction in order to enable the parties to apply to the court "for other or further

relief". The 1950 decree was appealable and was, in fact, appealed, the Supreme Court affirming in all respects. Ball v. United States, 338 U.S. 802, 70 S.Ct. 61, 94 L.Ed. 486.

The 1952 decree was entered against Loew's individually. It was "in lieu of and in substitution for" the 1950 decree. A comparison of the injunctive provisions of the 1950 decree with those of the 1952 decree immediately reveals that, in this respect, the two decrees are substantially identical except for the fact that the 1952 decree provided detailed plans of divorcement and divestiture in which Loew's agreed to divest itself of certain named theatres in various areas throughout the country. Ex. B, Sections IV, V, and VI. A salient feature of the 1952 decree is the footnote appearing on page 63, Section IX of the decree. This footnote is in reference to the District Court's decrees dated December 31, 1946, as amended, and February 8, 1950. The footnote provides that it was " * * * not intended by the entry of this judgment (the 1952 decree) against defendant Loew's Incorporated or by this judgment itself (the 1952 decree) to vacate or affect adjudications made in Equity Cause 87–273 of violations of the Sherman Act by said defendant". Finally, the identical provision that appeared in the 1950 decree with respect to the District Court's retaining jurisdiction appears in Section X of the 1952 decree.

It is quite apparent, therefore, from a comparison of the 1950 and 1952 decrees that the 1952 decree was designed and intended to satisfy the 1950 decree's direction that the parties submit plans for divorcement and divestiture of certain of Loew's exhibitor holdings in order to comply with the Supreme Court's 1948 decision. These plans consume the greater part of the 1952 decree, the remainder embodying, in substantially identical language, that which was provided in the 1950 decree. It is abundantly clear, therefore, that the 1952 decree concerned itself essentially with what should be termed "matters of remedy" and did not, and indeed, could not,

adjudicate or readjudicate any issues that had been determined by the District Court in its 1946 and 1950 decrees. This is so for the simple reason that the 1946 and 1950 decrees completely adjudicated all the issues presented by the Government's allegations of violations of the anti-trust laws. As of these dates, Loew's stood convicted of violations of the anti-trust laws as charged by the Government; from these dates these decrees were admissible in private litigation as "prima facie" evidence against Loew's as to those matters decided in each decree.

■ Thus, under Section 5 of the Clayton Act, a distinction should be drawn between a "right" and a "remedy". A "right" arises by force of the Government's allegations of a violation by the defendant of the anti-trust laws. The "remedy" arises once the "right" of the Government to recover has been resolved in its favor by an adjudication to the effect that the anti-trust laws have been violated by the defendants. Therefore, a Government suit ceases to pend, for purposes of Section 5, once there has been a final adjudication of some violation of the anti-trust laws which can be evidence to support allegations of the same alleged violations in a suit by a private plaintiff. This is especially so since it is the adjudication of a violation, and not the type and extent of relief granted, that is of evidentiary value to a private plaintiff in a subsequent suit. That the 1950 decree reserved jurisdiction, or for that matter, that the 1952 decree reserved jurisdiction, is insignificant because such reservation of jurisdiction was for purely ministerial purposes, as, for example, the 1950 decree reserved jurisdiction for the working out of plans of divorcement and divestiture from Loew's of its exhibitor holdings. Furthermore, the two decrees in this instance merely spelled out the inherent power of a Court of Equity to enforce its decree.

In a recent opinion, Grengs v. Twentieth-Century Fox Film Corp., 232 F.2d 325, the Court of Appeals for the Sev-

enth Circuit has indicated it is favorably disposed to accept the "right" and "remedy" theory advanced here. In referring to the Supreme Court's 1948 decision in the Paramount case, supra, which affirmed the judgment below in part and reversed in part, remanding for proceedings in conformity with the opinion, Judge Schnackenberg, in speaking for the court, stated as follows, at page 332:

"While we do not hold that the remandment, insofar as it dealt with the remedy only, would be significant here, we do believe that, it is significant that the Supreme Court held that the question of an illegal monopoly had not been completely passed upon by the district court. It therefore remanded for further action therein on a part of the monopoly question. The case, as to the latter matter, remained pending until the district court had passed thereon. In other words, there was a part of the violations charged against the distributors which then remained unresolved by the Supreme Court decision. This was included in that part of the case which was reversed and remanded to the district court for further proceedings."

It appears certain, therefore, that, for purposes of Section 5 of the Clayton Act, a Government suit ceases to pend when the violations charged in that suit have been resolved and accorded finality by Court decision. What might later be resolved concerning the remedy achieved would have no effect on the pendency of the Government suit. Employing the rule laid down by this Court in Barnett v. Warner Bros. Pictures Distributing Corp., D.C., 112 F. Supp. 5, the Paramount case ceased to pend as to Loew's upon the conclusion of the appeal taken from the judgment of February 8, 1950. Thus, when the Court of Appeals in the Sun Theatre case, supra, stated, in effect, that the Paramount case was "terminated" as to Loew's on February 7, 1952, it is ob-

vious that it was concerned with the date on which the specific "remedy" in that case was resolved and it therefore used the word "terminated"; had the Court of Appeals intended to convey its belief that the rights put into issue by the allegations of the Government's complaint had been resolved on that date, it would have used the words, "ceased to pend", and would not have used the word "terminated".

For the reasons stated, I hold that the Paramount case ceased to pend as to Loew's Inc. on a date well in advance of July 10, 1951, said date being the date two years prior to the day on which the instant case was filed. I hold, therefore, that under the applicable two-year statute of limitations, the instant plaintiff is precluded from recovering from these defendants, including Loew's Inc., any damages sustained prior to July 10, 1951.

The cause is hereby ordered set down for a pre-trial conference to be held on January 7, 1957 at 10:30 A. M. at which time the Court will establish a proper cut off date for the reception of evidence tending to establish the alleged conspiracy.