CENTURY HARDWARE CORPORA-TION, Plaintiff,

v.

POWERNAIL COMPANY, a corporation, and Edgar P. Anstett, Individually, as a general partner, trading and doing business as E. P. A. Manufacturing Company, Defendants.

No. 67–C–28.

United States District Court
E. D. Wisconsin.

March 29, 1968.

Nathan J. Rakita, Milwaukee, Wis., for plaintiff; Richard B. Surges, Milwaukee, Wis., of counsel.

Steven E. Keane and David E. Beckwith, Milwaukee, Wis., for defendants; Richard A. Whiting, Washington, D. C., of counsel.

## OPINION AND ORDER DISMISSING COMPLAINT

### I. FACTS

REYNOLDS, District Judge.

Before this court is a motion by defendants to dismiss this case on grounds that the applicable statute of limitations has expired. In the view of this court, the motion must be granted.

The plaintiff, Century Hardware Corporation, claims that it had been a dealer in certain of defendants' products and that defendants undertook a plan employing various coercive devices to keep resale prices of these products at a high

level. It maintains that its dealership was terminated because of refusal to comply with the plan, that defendants' activities violated the antitrust laws, that these activities resulted in injuries to plaintiff, and that plaintiff is entitled to treble damages of $144,000 pursuant to the relevant provisions of the Clayton Act, 15 U.S.C. § 15. Jurisdiction in treble damage actions for violations of the antitrust laws is based on 28 U.S.C. § 1337.

By filing the present motion to dismiss, defendants attempt to raise the issue of whether the statute of limitations on such actions, set down in 15 U.S.C. §§ 15b and 16(b), has run. Defendants claim that it has and plaintiff maintains that it has not. In resolving this very difficult issue, several things are clear.

## II. BASIC LAW

First. Plaintiff filed its complaint on February 2, 1967. Under Rule 3 of the Federal Rules of Civil Procedure, "A civil action is commenced by filing a complaint with the court." Hence, the case before us was "commenced," within the meaning of the Federal Rules, on February 2, 1967.

Second. Section 4B of the Clayton Act, 15 U.S.C. § 15b, provides: "Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. * * *" This section is the statute of limitations ordinarily applicable to treble damage actions under the antitrust laws.

Third. When any proceeding "to prevent, restrain, or punish violations of any of the antitrust laws" has been begun against a party later named as defendant in a treble damage civil suit and when certain other requirements are met, a different provision becomes relevant in ascertaining whether the statute of limitations has run. This provision, 15 U.S.C. § 16(b), establishes a rule of limitations substantially identical to that of 15 U.S.C. § 15b with one variation; namely, that the running of limitations is suspended "during the pendency" of such a proceeding and "for one year thereafter," provided that any action must be commenced *either* "within four years after the cause of action accrued" (a rule identical to that of 15 U.S.C. § 15b) *or* "within the period of suspension," i. e., during the "pendency" of the proceeding and for one year thereafter. At the time this issue was first briefed, it was undisputed that a certain F.T.C. proceeding against defendants in this case was such as to bring the alternative provision of 15 U.S.C. § 16(b) into operation. This court assumes, but *does not decide*, that the above-mentioned F.T.C. proceeding makes it necessary to apply 15 U.S.C. § 16(b) in this case.[1]

Fourth. Defendant has chosen to raise its defense of limitations by a motion to dismiss pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure. Since this motion was made before an answer was filed, the complaint is the only document on file telling much about the facts of the case, and under the Federal Rules, a complaint is a barebones document. In some jurisdictions this problem is considered serious. "A number of cases, under the Federal Rules or more or less similar state practice, have held that a motion to dismiss is not a proper method of raising the defense of limitations." Annot., 61 A.L.R.2d 300, 327 (1958). On the other hand, other courts, including those in this circuit,

---

1. After defendants' motion to dismiss was fully briefed and argued, defendants submitted a supplementary memorandum raising this issue for the first time. Specifically, defendants strongly argued that the F.T.C. proceeding against defendants in this case was not one "to prevent, restrain, or punish violations of any of the *antitrust laws*" (emphasis added) and, thus, was not such as to invoke the provisions of 15 U.S.C. § 16(b). The memorandum relied heavily on Laitram Corporation v. Deepsouth Packing Co., 279 F.Supp. 883 (E.D.La.1968). In light of our disposition of this case, this court did not deem it necessary to resolve the issue and should not be considered as having done so.

have taken the position that "if, on the facts stated in the complaint, the action would be barred by limitations, the complaint may be dismissed on motion." Id. at 321. This seems clearly to be the rule in this circuit. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954), cert. denied 348 U.S. 920, 75 S.Ct. 306, 99 L.Ed. 721 (1955). Under this rule, " * * * before a motion to dismiss will lie the bar of the statute of limitations must clearly appear from the face of the complaint * * *." Annot., 61 A.L.R.2d 300, 324 (1958). Accordingly, when the bar does appear from the face of the complaint, a motion to dismiss, at least in this circuit, is a proper means of raising this defense, and as we shall see, under applicable law, the bar of limitations indeed does appear with sufficient clarity.

### III. ISSUES RAISED

Taking the provisions of 15 U.S.C. § 16(b), read together with § 15b, as a starting point, two issues are posed for resolution. They are:

1. Was plaintiff's action "commenced" within four years after his cause of action "accrued"? To put the matter more precisely, did his cause of action "accrue" within four years before February 2, 1967, when under Rule 3 of the Federal Rules his action was "commenced"?—

2. Or, alternatively, was it brought "within the period of suspension" presumably brought about by the institution of proceedings by the F.T.C., such "period of suspension" being "during the pendency * * * [of such proceedings] and for one year thereafter * * *."? 15 U.S.C. § 16(b).

These two issues will be discussed in turn.

### IV. TIME CAUSE OF ACTION "ACCRUED"

Did plaintiff's cause of action "accrue" within four years before February 2, 1967; that is, *after* February 2, 1963? To answer this question, the allegations of plaintiff's complaint must be more closely scrutinized.

According to that complaint, plaintiff had been a dealer in certain of defendants' products, namely, "powernails" and "powercleats." On July 10, 1962, its dealership was terminated, allegedly because plaintiff would not conform to defendants' price schedule. On August 22, 1962, according to an affidavit submitted by defendants to explain one of plaintiff's allegations, the dealership of another company was terminated. Plaintiff alleges this was done because the other company had sold defendants' products to plaintiff, contrary to defendants' instructions. August 22, 1962, is the last date on which defendants are accused of doing anything specific to injure plaintiff. However, plaintiff does appear to allege a kind of continuing scheme on the part of defendants which apparently began in 1960 and continued until May 23, 1966, the date on which the F.T.C. required defendants to reinstate plaintiff as a dealer. According to the complaint, this continuing scheme injured plaintiff all during the period of its continuance.

It is clear under Rule 3 of the Federal Rules of Civil Procedure that plaintiff's action was commenced on February 2, 1967. Thus, the crucial question is when the four-year statute of limitations began to run or, in the words of the statute, when plaintiff's cause of action "accrued."

To say the very least, this question is not free of difficulty. Though it is not absolutely clear that plaintiff is claiming the existence of a "conspiracy" to violate the antitrust laws in any traditional sense, it seems to this court that a remark made in an American Law Reports Annotation is applicable at all events: " * * * general statements made by the courts with respect to the running of limitations as to civil actions for conspiracy [to violate the antitrust laws] are so vague and imprecise that they are of little meaning apart from the specific factual connotations under which they were uttered." Annot., 62 A.L.R.2d 1392 (1958).

In some other circuits, antitrust violations, whether or not they involve an "overt act" like the termination of a dealership, seem to be envisioned as a continuing series of acts, each of which creates a cause of action on which the statute of limitations begins to run as of the time of that act. See Hoopes v. Union Oil Company of California, 374 F.2d 480 (9th Cir. 1967); Highland Supply Corporation v. Reynolds Metals Company, 327 F.2d 725 (8th Cir. 1964); Momand v. Universal Film Exchanges, Inc., 172 F.2d 37 (1st Cir. 1948); and Hanover Shoe, Inc. v. United Shoe Machinery Corporation, 245 F.Supp. 258 (M.D.Pa. 1965). Applying this view to the facts of the case before this court, plaintiff could assert its claim if it could establish: (1) that defendants performed some acts pursuant to a scheme of business activity that violated the antitrust laws *after* February 2, 1963 (i. e., within four years before the commencement of this suit on February 2, 1967); *and* (2) that these unlawful activities of defendants occurring after February 2, 1963, caused injury to plaintiff. Damages would be limited to those incurred after February 2, 1963. This perspective, in our view, is fully in accord with both common sense and sound policy.

In this circuit, however, governing precedent compels a different view and requires us to hold that plaintiff's suit was not brought within the requisite four years after its claim accrued. Two decisions of the United States Court of Appeals for the Seventh Circuit are determinative.

Baldwin v. Loew's Incorporated, 312 F.2d 387 (7th Cir. 1963), was a treble damage action by certain owners of a movie theatre. They sought to attack a movie-leasing system that gave preference to "chain" operators of movie theatres and that allegedly compelled them to lease their theatre to a chain operator at very unfavorable terms. It appears that the arrangement plaintiffs sought to attack continued up to the time of the lawsuit. However, the plaintiffs had executed the lease of their theatre to a chain operator in 1945 and had exercised options to renew the lease as late as December 31, 1955. On the question of when the statute of limitations began to run, the court held:

"Where one has been injured by a civil conspiracy a statute of limitations begins to run at the time that injury is inflicted. In this case that date was when the lease was executed between plaintiffs and the lessee in 1945. * *

* * * * * *

"The exercise in 1955 of an option to extend the lease of 1945, the year in which 'the blow which caused the damage was struck', was relevant only as an element of damages. It was not an overt act from which the running of the statute of limitations may be computed. * * *" Id. at 390–391.

An assumed premise of this holding seems to be that "the injury" inflicted by violations of the antitrust laws is something that occurs at a given point of time, rather than something that continues over an interval. However, no theory or principle is put forward to explain the conclusion that "the injury" in the *Baldwin* case occurred at the *initial* signing of the lease, rather than at the renewals or over a continuing period. In the absence of any such clearly enunciated theory or principle, it is difficult to apply the *Baldwin* ruling to the facts of the case presently before me. However, if "the time that [the] injury is inflicted" is to be thought of as a given point of time, and if the quoted phrase is also to be construed in as common sense a fashion as possible, then it would seem that in this case "the time that [the] injury [was] inflicted" was when plaintiff's dealership was terminated, or at least no later than when the dealership of plaintiff's alternative supplier of "powercleats" and "powernails" was terminated. These acts occurred on July 10, 1962 and August 22, 1962, respectively. Both events occurred more than four years before this action was commenced; and, hence, plaintiff's claim would be barred.

In Emich Motors Corporation v. General Motors Corporation, 229 F.2d 714, 59 A.L.R.2d 159 (7th Cir. 1956), the Court of Appeals for this circuit considered the same question. In that case, like this one, a treble damage action under the Clayton Act, plaintiffs alleged that defendants had combined to "restrain interstate trade and commerce in Chevrolets and other automobiles manufactured by General Motors," the combination having for its purpose "the control of the financing of wholesale and retail purchases of such automobiles by compelling dealers to use the financing offered by General Motors' subsidiary, the Acceptance Corporation." Id. at 715. The plaintiff in the *Emich Motors* case, like the one in this case, had been a dealer in defendants' products, but its dealership had been terminated, allegedly for failure to cooperate in defendants' illegal business arrangement.

On the question of when the statute of limitations in such cases begins running, the court said: "With a few exceptions not here material, statutes of limitations begin running on the date on which the plaintiff first has the right to bring action." Id. at 719. Purporting to apply this principle, the court considered whether plaintiff, an ex-dealer of defendant, had the right to bring an action when it received notice that its dealership was being cancelled or when defendant actually stopped sending cars some five months later. The court held that plaintiff could have brought an action when it received notice that its dealership was being cancelled, that its cause of action "accrued" at that time, and that the statute of limitations began running at that time. Consequently, the court found that plaintiff's claim was barred by the expiration of the period of limitations.

This court harbors serious doubt about the soundness of the two decisions discussed above. First, they appear to be inconsistent with precedent in some other circuits. Cf. e. g., cases cited, supra, p. 226. Second, they establish rules that appear to presume that injuries inflicted by violations of the antitrust laws oc-cur at a given point of time, whereas to this court it seems more in accord with reality to view antitrust violations, which often are no more than continuing business arrangements, as continuing offenses. Third, they propound principles that, in practice, are extremely difficult to apply. Fourth, they appear to establish a policy in this circuit that is excessively friendly to statute of limitations defenses, excessively hostile to plaintiffs in treble damage antitrust actions, and therefore insufficiently respectful of the important competitive purposes served by private-action provisions in our antitrust laws.

Of course, the reverse side of this coin is that antitrust defendants must be protected against stale evidence and old claims of grievance. But the experience of this court has not been such as to indicate that defendants in such suits need any more protection than is presently afforded to them in other circuits.

Despite our misgivings, present law in this circuit, though not precisely clear in several particulars, would seem to hold at least this much: Where a plaintiff asserts a claim for damages resulting from a continuing violation of the antitrust laws, and where the alleged violation includes termination of plaintiff's dealership by defendant, plaintiff's cause of action "accrues" when the dealership is terminated, and the statute of limitations runs from that time.

Since plaintiff's dealership in this case was terminated more than four years before this action was commenced, this court is compelled to hold by the present law of this circuit that the plaintiff's claim is barred by the four-year statute of limitations.

## V. "PENDENCY" OF F.T.C. PROCEEDING

Of course, this court's holding that plaintiff's action was not "commenced" within four years after his cause of action "accrued" does not of itself mean that defendants' present motion must be granted. Plaintiff's action

might still have been brought "within the period of suspension" presumably brought about by the institution of proceedings by the F.T.C. As mentioned supra, page 225, the "period of suspension" is "during the pendency [of such proceedings] * * * and for one year thereafter: * * *." 15 U.S.C. § 16(b). The crucial question here is whether the proceedings brought against defendants in this case were still "pending" as of February 2, 1966, one year before the complaint in this case was filed and the action "commenced." See Rule 3, F.R.Civ. P., supra, p. 224.

An F.T.C. consent order was entered against defendants on January 7, 1966. If the entry of the consent order terminated "the pendency" of the F.T.C. proceedings, then this action was filed too late to comply with the alternative statute of limitations and is consequently barred. This court believes that the consent order did terminate "the pendency" of these proceedings.

Plaintiff concedes, after argument, that the consent decree was a final, non-appealable order. However, plaintiff contends that so-called "compliance provisions" in the consent order extended the "pendency" of the proceedings beyond the date of the consent order. These provisions required defendants to perform certain actions to comply with F. T.C. directives within 60 days and certain other actions within 120 days. Of course, if these actions were what terminated the proceedings, then the action in this case was timely begun.

However, this court believes that plaintiff's argument must be rejected for two reasons:

First. A matter in dispute is in common parlance normally said to terminate, i. e., cease to "pend," when a valid, final, nonappealable court or administrative order has been entered settling the dispute. For instance, if the highest court of the land were to hold that A owes money to B, then the case would ordinarily be said to be no longer pending, even if the money owing from A to B still has not been paid. In other words, it seems to this court to be more in accord with everyday language to find that the entry of a final F.T.C. order in this case terminated the F.T.C. proceedings.

Second. Precedent in this circuit appears clearly to establish that federal proceedings cease to "pend" on the date a consent order is entered. In Sun Theatre Corp. v. RKO Radio Pictures, Inc., 213 F.2d 284 (7th Cir. 1954), plaintiffs had brought a treble damage action against several defendants. A government antitrust suit had also been brought earlier against these same defendants. The earlier government suit was said to be a "proceeding" which under the predecessor to 15 U.S.C. § 16(b) tolled the running of limitations.

Two of the defendants in the government suit had suffered the entry of consent decrees against them before the government had concluded proceedings against certain other defendants. In the Sun Theatre civil suit, these same two defendants argued that the entry of the consent decree terminated proceedings against them and thus started the period of limitations running. Defendants disputed this, and the court was compelled to determine "whether the [government's] * * * case continued to pend against these defendants, thus tolling the statute of limitations as to them, until the cause was determined as to all defendants, notwithstanding the prior entry of the consent decrees; * * *." Id. at 292.

On this issue,[2] the court in the Sun Theatre case, supra, ruled squarely for

2. It should also be noted that in Sun Theatre, the court also considered "whether, if the consent decrees are held to be final, that action was nevertheless pending against said defendants within the meaning of [the predecessor of 15 U.S.C. § 16(b)] * * * in view of the various orders entered subsequently thereto modifying those decrees in certain respects." 213 F.2d at 292. The court held that these orders did not extend or revive the "pendency" of the government's suit. Id.

defendants, saying at pages 292–294 that plaintiff's position—

"\* \* \* has been urged and rejected by the courts in at least three well considered decisions by district courts. (Citations omitted.) In [Barnett v. Warner Bros. Pictures Distributing Corp., 112 F.Supp. 5 (N.D.Ill.1953)] \* \* \* the court said of the consent decrees against these defendants in U. S. v. Paramount, 'It is the opinion of the court that the pendency of a government suit ends (1) when final judgment has been entered after trial and appellate proceedings are concluded, or (2) when final judgment is entered by consent of the parties. Any other construction \* \* \* would lead to long, and in some instances permament suspensions of all statutes of limitations. Congress could not, have intended such a result.' 112 F.Supp. at page 7. The court held that the statute of limitations began to run against RKO and the Paramount defendants as of the date when consent decrees were entered against the respective defendants in the government's suit. (Citation omitted.)

"We think these decisions embody the correct interpretation of the Act. \* \*

\*     \*     \*     \*     \*     \*

"We conclude that the \* \* \* statute of limitations, although suspended originally as to RKO and the Paramount defendants by the pendency of U. S. v. Paramount, began to run in favor of these defendants when consent decrees were entered against them in that case \* \* \*. Plaintiff's claim is now barred."

In the view of this court, the *Sun Theatre* holding is dispositive of plaintiff's second contention in this suit. See also Tague v. Balaban, 146 F.Supp. 356 (N.D.Ill.1956). Plaintiff's claim is barred, and defendant's motion to dismiss must be granted.

at 293. If even later court orders do not affect the termination date of government proceedings, then it would seem *a fortiori*

that neither would mere "compliance provisions."