RUSS TOGS, INC., et al., Plaintiffs-Appellees,

v.

GRINNELL CORPORATION et al., Defendants-Appellants.

Nos. 639–642, Dockets 34427, 34439, 34529, 34541.

United States Court of Appeals, Second Circuit.

Argued March 26, 1970.

Decided May 11, 1970.

Denis McInerney, New York City (Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, of counsel), for defendant-appellant Grinnell Corp.

MacDonald Flinn, New York City (White & Case, New York City, of counsel), for defendant-appellant American District Telegraph Co.

Kelly, Drye, Warren, Clark, Carr & Ellis, New York City, for defendant-appellant Holmes Electric Protective Co.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant-appellant Automatic Fire Alarm Co.

Joel E. Hoffman, Washington, D. C., and David Berger, Philadelphia, Pa. (Wald, Harkrader, Nicholson & Ross, Washington, D. C., Weil, Gotshal & Manges, New York City, Cohen, Shapiro, Berger, Polisher & Cohen, Philadelphia, Pa., Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., Liebman, Eulau, Robinson & Perlman, New York City, Parker, Chapin & Flattau, New York City, Rubin, Wachtel, Baum & Levin, New York City, of counsel), for plaintiffs-appellees Russ Togs, Inc., and others.

Before LUMBARD, Chief Judge, and HAYS, Circuit Judge, and BLUMENFELD, District Judge.*

HAYS, Circuit Judge:

These are appeals from an order of the United States District Court for the Southern District of New York denying appellants' motion for partial summary judgment in these sixty private antitrust treble damage actions. Permission to appeal from the interlocutory order was granted by this court pursuant to 28 U.S.C. § 1292(b) (1964). The appeals were consolidated by stipulation of the parties.

Appellants American District Telegraph Company, Holmes Electric Protective Company and Automatic Fire Alarm Company are engaged in the business of providing "central station protective services" to customers at whose establishments are automatic fire and burglary alarm systems. The majority of the stock of each of these appellants was formerly held by appellant Grinnell Corporation.

Appellees base their private antitrust treble damage actions in whole or in part on a civil action brought by the United States against appellants in the United States District Court for the District of Rhode Island seeking injunctive relief for violations of the antitrust laws. The complaint in the government's action was filed on April 13, 1961. On November 27, 1964, the district court issued its findings of fact, conclusions of law and final decree holding that appellants had violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1964). United States v. Grinnell Corp., 236 F.Supp. 244 (D.R.I. 1964). All parties appealed, the United States because it deemed the relief inadequate and the appellants herein on both the merits and the relief.

On June 13, 1966, the Supreme Court affirmed the judgment of the district court "except as to the decree" and remanded "for further hearings on the na-

ture of the relief consistent with the views expressed herein." United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778. No petition for rehearing having been filed, the Supreme Court's mandate issued as of course on July 8, 1966, and was filed in the district court on July 11, 1966. On July 11, 1967, the district court, having held evidentiary hearings on some of the issues left open on remand as to which the parties could reach no agreement, entered a final decree detailing the relief granted.

The sole issue presented on this appeal is when the government's civil enforcement action ceased to pend, with the result that private actions filed more than one year thereafter could not benefit from the suspension of the applicable statute of limitations provided by Section 5(b) of the Clayton Act, as amended, 15 U.S.C. § 16(b) (1964).

The applicable statute of limitations, 15 U.S.C. § 15b (1964) (Section 4B of the Clayton Act, as amended), provides:

"Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued."

This period may be tolled, however, by the operation of Section 5(b), which provides:

"Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws * * * the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action

* Of the District of Connecticut, sitting by designation.

shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

Appellants contend that the government enforcement action ceased to pend on June 13, 1966, the date of the Supreme Court's decision. All 60 cases involved in this appeal were instituted more than one year after this date. Alternatively, appellants argue that the government action ceased to pend on July 11, 1967, the date of the district court's final decree, from which no appeal was taken. Four of the 60 cases were instituted more than one year after this date. Appellees, on the other hand, take the position that the government enforcement action continued to pend until September 9, 1967, the date when the time to appeal from the final decree expired. All 60 cases were filed less than one year after this date.[1]

The district court held that the government enforcement action continued to pend until the termination of the entire controversy and that, therefore, Section 5(b) tolled the statute of limitations until one year "from the date when the appellate process [was] exhausted as to a final judgment." Stating that "exhaustion of appellate process includes the expiration of the time within which to take an appeal," the district court set September 9, 1968 as the date of expiration of the tolling period. The district court accordingly denied appellants' motion for partial summary judgment in the 60 private actions involved in this appeal, all of which were filed before this date.[2]

We affirm the decision of the district court.

## II.

The basic inquiry in this case is "whether congressional purpose is effectuated" by holding that a government enforcement action continues to pend until the expiration of the time to appeal from the final decree resolving all issues of liability and relief. Burnett v. New York Central R.R. Co., 380 U.S. 424, 427, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965).

Appellants contend that the congressional purpose behind Section 5(b) is fully effectuated if a government enforcement action is held to cease to pend as soon as all issues of liability for violation of the antitrust laws have been conclusively and finally established in a judgment, even though further proceedings relating to relief may be necessary. They argue that drawing this distinction between liability and relief permits private plaintiffs to make full use of the benefits derived from a government enforcement action, and prevents needless prolongation of the time to file private claims.

■ Appellants point out that the 1955 amendments to Section 5 of the Clayton Act were inspired by a concern that some state statutes of limitations, applicable under preexisting law, provided unduly long periods of time for bringing suit. Congress' solution to this problem was to replace diverse state laws with a uniform federal rule requiring that private antitrust actions be brought within four years of accrual or within one year after a government enforcement action ceased to pend. See S. Rep. No. 619, 84th Cong., 1st Sess. (1955) in 1955 U.S.Code Cong. & Admin.News, pp. 2332–2333. However, the legislative history does not support the contention that Congress also intended to meet the problem of stale claims by giving to the word "pendency" the unnatural meaning appellants seek to ascribe to it. In describing the length of the period encompassed by the word "pendency," the Senate Report accompanying the 1955 amendments to the Clay-

---

1. Alternatively, appellees argue that the government action continued to pend at least until the date of the district court's final decree.

2. The motion was granted with respect to two actions filed after September 9, 1968. These actions have been voluntarily discontinued.

ton Act consistently refers to the *"duration"* of the government's antitrust suit; it states that a private action must be brought within one year "after the Government's case has been *concluded"* or, in another instance, within one year "after the Government suit [has been] *terminated."* S. Rep. No. 619, *supra.* (Emphasis added.) The choice of such words to describe the pendency of a government enforcement action hardly shows an intention to limit the "pendency" of that action to the liability phase only. A better interpretation is that the term "pendency" in Section 5(b) was meant to refer to all proceedings in the government action until its termination in a final decree disposing of all issues.

In urging that we adopt their liability-remedy distinction, appellants rely upon a line of decisions in private antitrust suits, which grew out of government proceedings against the motion picture industry.[3] See Baldwin v. Loew's, Inc., 312 F.2d 387, 391–392 (7th Cir. 1963); Grengs v. Twentieth Century Fox Film Corp., 232 F.2d 325, 332 (7th Cir.) (dictum), cert. denied, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 77 (1956); Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 193 F.Supp. 401, 404 (S.D.N.Y.1961); Tague v. Balaban, 146 F.Supp. 356, 360 (N.D.Ill. 1956). Although the cases are readily distinguishable from the instant one in terms of the practical importance to private litigants of the issues of relief left open,[4] these decisions lend some support to appellants' position that a government enforcement action ceases to pend upon completion of its liability phase. However, in the light of more recent developments in the interpretation of Section 5(b), we do not believe these cases are controlling.

All of the cases antedate the Supreme Court's decision in Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 85 S.Ct. 1473, 14 L. Ed.2d 405 (1965), and were decided under Section 5 as it existed prior to amendment in 1955.[5] The decisions were based upon the premise that the

3. See United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948).

4. In the *Paramount* proceedings, with which these cases were concerned, the Supreme Court had affirmed, after a prior remand, the district court's final decree which left open only the details of divestiture. See United States v. Loew's, Inc., 1950–1951 CCH Trade Cas. ¶ 62573 (S.D.N.Y.), aff'd, 339 U.S. 974, 70 S.Ct. 1032, 94 L.Ed. 1380 (1950). The cases held that the government action ceased to pend upon the Supreme Court's denial of a rehearing rather than upon the date of a subsequent district court decree containing final plans of divestiture. See Baldwin v. Loew's, Inc., 312 F.2d 387, 391–392 (7th Cir. 1963); Tague v. Balaban, 146 F.Supp. 356, 360 (N.D.Ill.1956). In the instant case, the Supreme Court's remand left open much more than the details of divestiture. In fact, it was not until the district court's second and final decree that the specific practices enjoined were defined.

5. Section 5, 38 Stat. 731, provided:
"That a final judgment or decree hereafter rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto; *Provided,* This section shall *not apply* to consent judgments or decrees entered before any testimony has been taken; *Provided further,* This section shall not apply to consent judgments or decrees rendered in criminal proceedings or suits in equity, now pending, in which the taking of testimony has been commenced but has not been concluded, provided such judgments or decrees are rendered before any further testimony is taken.
"Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in

tolling provisions of Section 5 were coextensive with the evidentiary provisions [6] and did not extend to the protection of other benefits accruing from the government proceedings. See Hardy Salt Co. v. Illinois, 377 F.2d 768, 770–771 (8th Cir.), cert. denied, 389 U.S. 912, 88 S.Ct. 238, 19 L.Ed.2d 260 (1967).

In Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., *supra,* the Supreme Court rejected the view that the scope of Section 5(b) was "necessarily coextensive" with the scope of Section 5(a) and adopted a broad interpretation of the scope of the benefits accorded to the private litigant by Section 5(b) beyond the limitations of Section 5(a). Noting that "Congress has expressed its belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws," *id.* 381 U.S. at 318, 85 S.Ct. at 1477,[7] and that "it is plain that in § 5(b) Congress meant to assist private litigants in utilizing any benefits they might cull from government antitrust actions," *id.* at 317, 85 S.Ct. at 1477, the Court said:

> "It may be * * * that when it was enacted the tolling provision was a logical backstop for the prima facie evidence clause of § 5(a). But even though § 5(b) complements § 5(a) in this respect by permitting a litigant to await the outcome of government proceedings and use any judgment or decree rendered therein—a benefit which often is of limited practical val-

ue—it is certainly not restricted to that effect. As we have pointed out, the textual distinctions as well as the policy basis of § 5(b) indicate that it was to serve a more comprehensive function in the congressional scheme of things. The Government's initial action may aid the private litigant in a number of other ways. The pleadings, transcripts of testimony, exhibits and documents are available to him in most instances. In fact, the rules of the Commission so provide. 16 CFR § 1.132(e). See generally 16 CFR § 1.131 *et seq.* Moreover, difficult questions of law may be tested and definitively resolved before the private litigant enters the fray. The greater resources and expertise of the Commission and its staff render the private suitor a tremendous benefit aside from any value he may derive from a judgment or decree. Indeed, so useful is this service that government proceedings are recognized as a major source of evidence for private parties. * * *

> * * * * * *

> "* * * In this connection, and of crucial significance, is the fact that the potential *advantages* available to such litigants because of § 5(b) reach far beyond the specific and limited benefits accruing to them under § 5(a). * * *" (Footnote omitted.) *Id.* at 319–320, 85 S.Ct. at 1477–1478.

Also see Union Carbide and Carbon Corp. v. Nisley, 300 F.2d 561, 569 (10th Cir. 1961), appeal dismissed sub nom.

---

said suit or proceeding shall be suspended during the pendency thereof."

6. Now Section 5(a) of the Clayton Act, as amended, 15 U.S.C. § 16(a) (1964), which provides:

"A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this

title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title."

7. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130–31, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); Leh v. General Petroleum Corp., 382 U.S. 54, 59, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965).

Wade v. Union Carbide and Carbon Corp., 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed. 2d 46 (1962).

Subsequent decisions have reaffirmed the *Minnesota Mining* interpretation of Section 5(b) and have implemented its policies, abandoning prior rules. See, e. g., Leh v. General Petroleum Corp., 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965) (collateral estoppel principles of Section 5(a) are not determinative on the issue of whether a private action is "based in whole or in part on any matter complained of" in the government enforcement action); New Jersey v. Morton Salt Co., 387 F.2d 94 (3d Cir. 1967), cert. denied sub nom. International Salt Co. v. New Jersey, 391 U.S. 967, 88 S.Ct. 2035, 20 L.Ed.2d 880 (1968) (enforcement action continues to pend against each defendant until final decrees have been entered against all); Hardy Salt Co. v. Illinois, *supra*.

### III.

We believe the policies behind Section 5(b), as expressed in the *Minnesota Mining* decision, are best effectuated by holding that a government enforcement action continues to pend until it has been terminated in a final decree resolving all issues of liability and relief.[8] The full benefits of government proceedings are not available until there has been a final determination in the action, including a final determination on the relief to be granted. Remand proceedings, even if limited to issues of relief, may generate evidence and legal rulings of value to the private litigant. Other benefits may accrue only upon termination of the government proceedings:

> "An intelligent evaluation of the Government's case can only be made at the conclusion of the entire lawsuit. Before the Government litigation is entirely concluded, the private plaintiff may not be in a position to assess the strength of his case against a particular defendant, or even to formulate a complaint. In addition, during the pendency of the Government litigation, transcripts, documents and exhibits may not be readily available to him." Michigan v. Morton Salt Co., 259 F.Supp. 35, 50 (D.Minn.1966), aff'd sub nom. Hardy Salt Co. v. Illinois, *supra*.

Moreover, often ultimate liability in government enforcement actions can be defined only in terms of the relief granted. This is quite arguably true in the instant case. The Supreme Court's decision, United States v. Grinnell Corp., *supra*, left important matters open for determination on remand. The Court found it impossible to resolve on the record before it the extent to which long term contract and title retention requirements imposed on central station protective service subscribers constituted substantial barriers to competition requiring protective provisions. The district court was directed to explore the various aspects of the issue on remand and to fashion suitable protective provisions to deprive the two devices of whatever coercive power they might be found to have. 384 U.S. at 578, 86 S.Ct. 1698, 16 L.Ed.2d 778. The Court also directed the district court to replace its broad and generalized restraining order with one specifically enjoining the precise practices found to have violated the Act. *Id.* at 579, 86 S.Ct. 1698. Thus, significant issues remained to be decided by the district court. In this sense the Supreme Court's decision did not finally determine all issues of liability. The situation illustrates the conceptual difficulties which arise from an attempt to use appellants' distinction between liability and relief.

The interrelationship between the liability and relief phases of a government antitrust proceeding was recognized by

---

8. We do not hold that the "pendency" of the government action includes the period subsequent to a final decree during which the court exercises continuing jurisdiction for purposes of modification and enforcement under the usual retention of jurisdiction clause.

the Supreme Court in Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 485, 88 S.Ct. 2224, 20 L. Ed.2d 1231 (1968). There the Court said that in determining whether an issue was actually adjudicated in a government enforcement action, and thus available as prima facie evidence, it is proper to look to earlier findings, opinions and decrees, both "with respect to violation and * * * with respect to remedy." *Id.* See also Gottesman v. General Motors Corp., 414 F.2d 956, 964 (2d Cir. 1969).

Our decision in Fifth and Walnut, Inc. v. Loew's, Inc., 176 F.2d 587, 593–594 (2d Cir.), cert. denied, 338 U.S. 894, 70 S.Ct. 242, 94 L.Ed. 549 (1949), implicitly recognizes the danger of making too fine a distinction between liability and relief. In that case we held that only "a final and definitely settled" decree upon the "definite terminus of the litigation" may be introduced as prima facie evidence in a private treble damage action. Although we noted that in "an extreme situation," a decree disposing of "practically all the issues involved" might be admissible, we found that the issues left open for resolution on remand by the Supreme Court's decision in United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), whether pertaining to liability or to relief, were "so complex and vague" as to preclude the use of the findings or decree as prima facie evidence in a private action. Since it is now clear that Section 5(b) is more than a protective complement to Section 5(a), we believe the rule we adopt in this case represents the logical sequel to our decision in Fifth and Walnut, Inc. v. Loew's, Inc.

### IV.

■ Finally, we believe the "pendency" of a government enforcement action continues until the expiration of the time to appeal from the final decree resolving all issues of liability and relief. A judgment or decree in a government enforcement action becomes "final" only

when the government and the defendants are satisfied with the result and determine not to appeal. Therefore, only after the time to appeal has expired can private litigants rely on the irrevocability of determinations made in the government action. Twentieth-Century Fox Film Corp. v. Brookside Theatre Corp., 194 F.2d 846, 857–858 (8th Cir.), cert. denied, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348 (1952).

The 1955 amendments to the Clayton Act provide that private litigants must sue within one year after the government enforcement action ceases to pend if they wish to take advantage of the tolling provisions of Section 5(b). Previously the unexpired portion of the applicable state statute of limitations, whether of one day's duration or of five years' duration, was simply tacked on after the date the government action ceased to pend. Appellants argue that the judicially created grace of the appeal period is now no longer necessary and should be subsumed in the one year period of "grace" provided by Congress. Neither the explicit language of Section 5(b) nor its legislative history supports this contention. To hold that the pendency of a government action does not include the time within which an appeal may be taken would have the effect of reducing the one year period to ten months. We do not believe Congress intended this result. Moreover, in view of the broad purposes of Section 5(b), any doubt as to the meaning of the tolling provision should be resolved "in a way which will permit a determination on their merits of private claims * * *." New Jersey v. Morton Salt Co., *supra,* 387 F.2d at 97.

■ We hold that the government action against appellants continued to pend until September 9, 1967, the date when the time to appeal from the district court's final decree of July 11, 1967, expired. See 28 U.S.C. § 2101(b) (1964). All appellees filed their private actions within one year from this date.

Accordingly, we affirm the order of the district court denying appellants' motion for partial summary judgment against appellees based on the statute of limitations.