**GUAM FEDERATION OF TEACHERS, LOCAL 1581, OF the AMERICAN FEDERATION OF TEACHERS, a corporation, et al., Plaintiffs-Appellants,**

v.

**Alfred C. YSRAEL, also known as Al Ysrael, Defendant-Appellee.**

**No. 73-1444.**

United States Court of Appeals, Ninth Circuit.

Feb. 1, 1974.

David M. Shapiro, Agana, Guam, for plaintiffs-appellants.

Howard G. Trapp, of Trapp, Gayle & Co., Agana, Guam, for defendant-appellee.

Before DUNIWAY, TRASK and WALLACE, Circuit Judges.

## OPINION

DUNIWAY, Circuit Judge:

Plaintiffs, the Guam Federation of Teachers (Union), and seven of its officers sue Ysrael for libel. The case was tried before a jury. At the conclusion of the plaintiffs' case, Ysrael moved for a directed verdict, which was granted. Judgment was entered for Ysrael. Plaintiffs appeal and we reverse.

Ysrael was appointed a member of the Guam Territorial School Board by the Governor of Guam. The Union strenuously opposed the appointment and the matter developed into a public row. In the course of it, Ysrael caused various statements about the Union and its officers to be published in a Guam newspaper, the Pacific Daily News.

On this appeal the parties are in agreement that the Union and its officers are "public officials," or at least "public figures" within the rationale of New York Times Co. v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 and its progeny, particularly Curtis Publishing Co. v. Butts, 1967, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094. It is not contended that the individual plaintiffs, though not specifically named in Ysrael's press statements, are not identifiable members of the group to which Ysrael referred. Rosenblatt v. Baer, 1966, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597. It is not contended that at least some of Ysrael's statements to the press are not libelous. It is not contended that a jury could not find that they are false. The only question is, were the plaintiffs entitled to have their cause go to the jury on the issue of malice?

■ The test for malice, laid down in New York Times, supra, and repeatedly applied in its numerous progeny is that the statement must have been "made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (376 U.S. at 279–280, 84 S.Ct. at 726) The court also ruled that the proof of malice must carry "the convincing clarity which the constitutional standard demands" (Id. at 285–286, 84 S.Ct. at 729).

■■ We have examined the plaintiffs' evidence and we conclude that it would permit a jury to find "actual malice" as defined in New York Times, supra, when viewed in the light most favorable to the plaintiffs. This is the usual standard for viewing the evidence when a motion for a directed verdict is involved. When such a motion is granted, the losing party is entitled to every reasonable inference that may be drawn from the evidence. Brady v. Southern Ry. Co., 1943, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Shafer v. Mountain States Tel. & Tel. Co., 9 Cir., 1964, 335 F.2d 932; Girardi v. Gates Rubber Co. Sales Div., Inc., 9 Cir., 1963, 325 F.2d 196. These rules are so well established as to have become clichés.

In this case, Ysrael's own testimony as an adverse witness is enough to get the plaintiffs to the jury under the New York Times standards. He repeatedly admitted that he did not know whether what he said was true. He repeatedly admitted that he did nothing, or almost nothing, to verify his charges. As to most of his statements, he repeatedly admitted that he knew of no facts to support them; he either relied upon unspecified rumor or upon nothing at all. He simply asserted that he believed that what he said was true. Such an assertion is not enough to support a directed verdict in his favor. If it were, mere swearing could, as a matter of law, defeat any action to which the New York Times principles are applicable. See St. Amant v. Thompson, 1968, 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262.

Ysrael's counsel does not really dispute the foregoing general propositions. He argues that they do not apply to this type of case. The district judge, in granting the motion for a directed verdict, took the same position. In his written order, he said:

"*Actual malice* is a constitutional issue to be decided initially by the trial

judge vis-a-vis motions for summary judgment and directed verdict. Bon Air Hotel, Inc. v. Times, [sic] Inc., *supra.* [5 Cir., 1970, 426 F.2d 853] In making this judgment, the Court will judge the credibility of the witnesses and draw its own inferences from the evidence.

. . . Truth or falsity of a publication, however, is not the constitutional test. The constitutional test is that the statements must be published with actual knowledge of their falsity or with reckless disregard of their falsity.

As has been noted before, actual malice is a constitutional issue to be determined by the trial judge on a motion for a directed verdict.

The Court has found from the evidence—testimony of the witnesses and the admitted exhibits,—that the plaintiffs have failed to establish by a clear convincing evidence that the defendant did publish the statements or articles with actual knowledge of their falsity or with reckless disregard as to whether or not it is false."

The views involved in the court's order seem to have been first stated by Judge J. Skelly Wright in his concurring opinion in Wasserman v. Time, Inc., 1970, 138 U.S.App.D.C. 7, 9, 424 F.2d 920, 922–923, an opinion in which Judge Robinson concurred. Judge Wright's position is this:

"In my judgment New York Times Co. v. Sullivan makes actual malice a constitutional issue to be decided in the first instance by the trial judge applying the *Times* test of actual knowledge or reckless disregard of the truth. . . . Unless the court finds on the basis of pretrial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice in the *Times* sense, it should grant summary judgment for the defendant.

. . . If the case survives the defendant's summary judgment motion, the trial court at the close of the plaintiff's case must decide whether actual malice has been shown with 'convincing clarity.' In making this judgment the court will judge the credibility of the witnesses and draw its own inferences from the evidence. If the trial is permitted to proceed, the court will be called upon again to make a judgment on the actual malice issue at the close of all of the evidence." (Citations and footnotes omitted.)

What Judge Wright said was not necessary to the decision, because in *Wasserman* the court reversed a summary judgment for the defendant and remanded "for trial on the issues of actual malice, defamation and possible damages." However, we assume that Judges Wright and Robinson may have gone through the exercise that Judge Wright describes.

Judge Wright's views were followed by the Fifth Circuit in Bon Air Hotel, Inc. v. Time, Inc., 5 Cir., 1970, 426 F.2d 858, 864–865. We are not sure, however, as to just how far the court actually went. It summarized the legal position:

"Numerous courts have found summary judgment for publishers proper where the record is devoid of genuine issues of fact as to whether the alleged defamatory statement was published with actual knowledge of its falsity or with a reckless disregard of whether it was true or false. Other courts, however, have not allowed a publisher's motion for summary judgment where facts were presented from which a jury could find that a statement was made with actual malice." (Footnotes omitted.)

We note that this language does not include a reweighing of the evidence, including credibility of witnesses: it merely states the usual rule to be followed when summary judgment is involved. The court's analysis of the facts (pp. 865–867) is similar. It concludes:

"We are convinced that Bon Air has not presented issues of fact from which a jury could find that Time published the article with actual knowledge of its falsity or with a reck-

less disregard as to whether or not it was false.[21]"

The footnote reads:

"21. The following statement by Judge Tuttle in *McLaney* [Time, Inc. v. McLaney, 5 Cir., 1969, 406 F.2d 565] seems pertinent here:

'Where * * * it is plain that the record has been fully developed by depositions and affidavits on a motion for summary judgment, and such record demonstrates that, construing all of the facts and inferences to be drawn therefrom in favor of the party against whom the judgment is entered, he would not be entitled to have a jury verdict stand, we have not hesitated to hold that the grant of summary judgment is proper.' 406 F.2d at 571–572."

We find no hint in this language that the judge is to weigh credibility or to refuse to give a party the benefit of inferences that can legitimately be drawn by a jury. However, because the court did cite and quote from Judge Wright's opinion, we assume that the court in fact went through the exercise that Judge Wright suggests.

We agree with our brothers of the District of Columbia and Fifth Circuits that it is important that judges focus attention on the summary judgment, directed verdict and judgment notwithstanding the verdict procedures in libel actions. When civil cases may have a chilling effect on First Amendment rights, special care is appropriate. Thus, a judicial examination at these stages of the proceeding, closely scrutinizing the evidence to determine whether the case should be terminated in a defendant's favor, provides a buffer against possible First Amendment interferences. The Supreme Court has instructed trial courts to "examine for [themselves] the statements in issue and the circumstances under which they were made to see . . . whether they are of a character which the principles of the First Amendment . . . protect." To be unprotected, actual malice must be shown with "convincing clarity." *New York Times, supra,* 376 U.S. at 285–286, 84 S.Ct. at 728–729.

However, with respect, we are not persuaded by the second phase of Judge Wright's analysis in *Wasserman* which suggests that in deciding these motions, the trial court should judge the credibility of witnesses and draw its own inferences from the evidence. We think that in a libel case, as in other cases, the party against whom a motion for summary judgment, a motion for a directed verdict, or a motion for a judgment notwithstanding the verdict is made is entitled to have the evidence viewed in the light most favorable to him and to all inferences that can properly be drawn in his favor by the trier of fact. We think, too, that in such cases it is not only not the duty of the judge, or of this court of appeal, to weigh the credibility of the evidence, or to draw inferences in favor of the moving party (except, of course, when no contrary inference can legitimately be drawn), but that neither the judge nor this court on appeal has the authority to weigh credibility or to choose among legitimate inferences in such cases.

The *standard* against which the evidence must be examined is that of *New York Times* and its progeny. But the *manner* in which the evidence is to be examined in the light of that standard is the same as in all other cases in which it is claimed that a case should not go to the jury. If the evidence, so considered, measures up to the *New York Times* standard, the case is one for the jury, and it is error to grant a directed verdict, as the trial judge did in this case.

We do not think that the authorities on which Judge Wright relies sustain his thesis. Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, deals with the admissibility of evidence, a very different matter from the weight or credit to be given to admissible evidence. It may well be that its procedure

ought to be followed in libel cases—a determination by the trial judge, on the record, and sufficiently articulated to be helpful to a reviewing court, as to whether plaintiff has presented sufficient evidence to go to the jury. But that is a far cry from the next step that Judge Wright would take, that is, a change in the manner in which the judge is to examine the evidence.

Rosenblatt v. Baer, 1966, 383 U.S. 75, 88, 86 S.Ct. 669, 15 L.Ed.2d 597, deals with privilege—whether the evidence shows the plaintiff to be a public official. It says nothing about how the trial judge is to view the evidence in making that determination.

In *New York Times, supra,* 376 U.S. at 284–286, 84 S.Ct. at 728–729, the Court said:

"Since respondent may seek a new trial, we deem that considerations of effective judicial administration require us to review the evidence in the present record to determine whether it could constitutionally support a judgment for respondent. This Court's duty is not limited to the elaboration of constitutional principles; we must also in proper cases review the evidence to make certain that those principles have been constitutionally applied. . . . We must "make an independent examination of the whole record,' Edwards v. South Carolina, 372 U.S. 229, 235 [83 S.Ct. 680, 683, 9 L.Ed.2d 697], so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression.[26]"

And in a footnote, the Court commented on the relationship between such an examination and the constitutional right to jury trial:

"26. The Seventh Amendment does not, as respondent contends, preclude such an examination by this Court. . . . But its ban on re-examination of facts does not preclude us from determining whether governing rules of federal law have been properly applied to the facts. '[T]his Court will review the finding of facts by a State court . . . where a conclusion of law as to a Federal right and a finding of fact are so intermingled as to make it necessary, in order to pass upon the Federal question, to analyze the facts.' Fiske v. Kansas, 274 U.S. 380, 385–386 [47 S.Ct. 655, 656–657, 81 L.Ed. 1108]. See also Haynes v. Washington, 373 U.S. 503, 515–516 [83 S.Ct. 1336, 1344, 10 L.Ed. 2d 513]."

We find nothing in this language to indicate that the Court's examination was to disregard the usual rules for determining whether a case should go to the jury. It merely requires a reexamination as to whether the evidence, viewed most favorably to the plaintiff, is sufficient to meet the *New York Times* standard if the jury accepts it.

Subsequent decisions seem to us to bear out the foregoing views. In Rosenblatt v. Baer, 1966, 383 U.S. 75, 87, 86 S.Ct. 669, 677, 15 L.Ed.2d 597, after holding that the case fell within the principles of *New York Times,* the Court said:

"Moreover, even if the claim falls within *New York Times,* the record suggests respondent may be able to present a jury question of malice as there defined."

There is no hint that the Court reached this position by deciding the credibility of witnesses or selecting between permissible inferences.

In Time, Inc. v. Hill, 1967, 385 U.S. 374, at 391, 87 S.Ct. 534, at 544, 17 L.Ed. 2d 456, the Court said:

"Turning to the facts of the present case, the proofs reasonably would support either a jury finding of innocent or merely negligent misstatement by Life, or a finding that Life portrayed the play as a re-enactment of the Hill family's experience reckless of the truth or with actual knowledge that the portrayal was false."

Again, we find no hint that the evidence was weighed as Judge Wright would weigh it. Reversal was based upon error in instructions to the jury.

In Beckley Newspapers v. Hanks, 1967, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248, the Court reversed on the ground of insufficiency of the evidence, but there is nothing in the opinion to support Judge Wright's thesis. On the contrary, the Court merely held that the proof was not "sufficient to present a jury question." (p. 85, 88 S.Ct. p. 200) *See also* St. Amant v. Thompson, 1968, 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L. Ed.2d 262; Rosenbloom v. Metromedia, Inc., 1971, 403 U.S. 29, 55, 91 S.Ct. 1811, 29 L.Ed.2d 296.

Nor do the court of appeals decisions cited by Judge Wright support his conclusions. In The Washington Post Co. v. Keogh, 1966, 125 U.S.App.D.C. 32, 365 F.2d 965, we find no hint that the court of appeals was making its own judgment as to credibility. Indeed, the court purported to apply the following rule:

> "First, the right to trial by jury is at stake, so courts must be ever careful to grant summary judgment only when no issue of fact is controverted or turns upon a choice between permissible inferences from undisputed evidence." (at 34, 365 F.2d at 967.)

Goldwater v. Ginzburg, 2 Cir., 1969, 414 F.2d 324, cert. denied, 1970, 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695, applies the normal rule (p. 337):

> "Viewing the submitted materials and the inferences which might be drawn from them 'in the light most favorable to the party opposing the motion', United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L. Ed.2d 176 (1962), the district court properly concluded that a trier of fact should have the opportunity to decide whether appellants were liable to appellee."

So does Time, Inc. v. Ragano, 5 Cir., 1970, 427 F.2d 219, 221.

In the present case, the plaintiffs' evidence, viewed in the light most favorable to them, is sufficient to meet the *New York Times* standard. The case should have gone to the jury.

The judgment is reversed and the case is remanded for further proceedings.

WALLACE, Circuit Judge (concurring and dissenting):

I concur that the trial judge applied the wrong standard when he granted the motion for a directed verdict. I believe the majority opinion describes the proper standard to be applied. However, I would remand the case to allow the trial court to reconsider the motion in the first instance under the guidelines established by this opinion.