**KEYSTONE RESOURCES, INC., Plaintiff,**

v.

**AMERICAN TELEPHONE & TELEGRAPH COMPANY, Western Electric Company, and Nassau Recycle Corporation, Defendants.**

Civ. A. No. 84–1081.

United States District Court, W.D. Pennsylvania.

Oct. 9, 1986.

As Amended Nov. 3, 1986.

David B. Buerger, Pittsburgh, Pa., for plaintiff.

David H. Pittinsky, James J. Rodgers, Carl W. Hittinger, Donna M. Albani and Susan Budnick, Dilworth, Paxson, Kalish & Kaufman, Philadelphia, Pa., Robert J. Cindrich, David B. Mulvihill, Mansmann, Cindrich & Huber, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

DIAMOND, District Judge.

█ Plaintiff Keystone Resources has sued defendants American Telephone & Telegraph ("AT & T"), Western Electric, and Nassau Recycle Corporation ("Nassau") under the antitrust laws, 15 U.S.C. §§ 1, 2, 15. Before us is defendants' motion for summary judgment. We hold that the statute of limitations, 15 U.S.C. §§ 15b, 16(i), bars Keystone's claim, and we grant summary judgment for the defendants.[1]

### I. *Background*

In the early 1970s, Keystone recycled communications copper wire for Nassau, a subsidiary of Western Electric, at Keystone's plants in Mars, Pennsylvania; Greensboro, Georgia; and Newark, New Jersey. Keystone's plants were designed to recycle exclusively this scrap from Nassau. Nassau obtained the scrap from defendant AT & T and its Bell Operating Companies ("BOCs"). Since AT & T had a monopoly on the production of telecommunications equipment, it produced eighty percent of the telecommunications scrap in the United States.

In 1976, Nassau opened its own scrap reprocessing facility in Gaston, South Carolina, to perform in-house the services previously done for Nassau by Keystone and other scrap reprocessing companies. According to Keystone, Nassau and its co-defendants conspired to accomplish this vertical integration with the intent to suppress competition. As a result, Nassau terminated its operations at Keystone's three plants by the end of 1979. Unable to obtain telecommunications scrap in profitable amounts, Keystone converted its Mars and Greensboro facilities to aluminum and zinc smelting and closed its Newark plant, all before May 1, 1980. The BOCs continued to offer scrap for competitive bidding, but Keystone did not bid. Nassau obtained a majority of the BOCs' recycling contracts.

On May 1, 1984, more than four years after Keystone stopped recycling Nassau scrap, Keystone commenced this action.

In this motion for summary judgment, defendants contend that Keystone did not commence this action within the four-year statute of limitations. 15 U.S.C. § 15b. Defendants assert that Keystone's cause of action accrued sometime in 1976, when Nassau opened its Gaston plant, and that

---

1. Because of our resolution of the statute of limitations issue, we do not reach other grounds defendants advance for dismissal.

Keystone's injury was final by the end of 1979, when Nassau ceased operations at Keystone's Newark plant. According to defendants, even if they committed further acts of monopolization after 1980, Keystone did not suffer new injuries that might give rise to new causes of action because Keystone did not and could not bid on any new scrap contracts after 1979.

Defendants also contend that the one-year suspension period, 15 U.S.C. § 16(i),[2] brought into play by the United States' action against AT & T does not save Keystone's action. According to defendants, at the latest, the government action against AT & T ceased to pend on August 24, 1982, when Judge Greene approved the parties' consent decree and ordered the case closed. *See United States v. American Telephone & Telegraph Co.*, 552 F.Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983).[3]

In response, Keystone claims that additional overt acts of monopolization occurred after May, 1980, giving rise to causes of action within the four year limitation period. Keystone alleges that it wanted to bid on the BOCs contracts, but monopolization during this period, not defendant's pre–1980 acts, prevented Keystone from bidding on them. Further, Keystone submits that the government action continued to pend until Judge Greene approved the AT & T plan of reorganization on August 5, 1983.[4] *See United States v. Western Electric Co., Inc.*, 569 F.Supp. 1057

(D.D.C.1983), *aff'd sub nom. California v. United States*, 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983). Thus, Keystone timely commenced its action on May 1, 1984.

## II. *The Pendency Toll*

The Third Circuit has not resolved the issue of when an action resulting in a consent decree ceases to pend for purposes of 15 U.S.C. § 16(i). In *Shimazaki Communications, Inc. v. AT & T*, 647 F.Supp. 10 (S.D.N.Y.1986), Judge Duffy held that the *United States v. AT & T* litigation terminated on August 24, 1982, with the entry of the consent decree, and not with the subsequent approval of the final plan of reorganization. We are persuaded that Judge Duffy's decision is consistent with the legislative intent behind the tolling provision and the opinions of other courts interpreting it.

Explanation of our decision requires a brief description of the United States government litigation against AT & T. These facts are not in dispute.

In 1974, the federal government commenced an antitrust action against AT & T in the District Court for the District of Columbia before Judge Greene. That case proceeded to trial in 1981. After presentation of the government's case and most of the defendant's case, the parties filed a stipulation of dismissal on January 8, 1982. On the same day, the parties submitted a modification of final judgment in a 1949

---

**2.** Section 16(i) states:

Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 or 15c of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

**3.** Defendants propose in the alternative various earlier dates as the end of pendency. Because we analyze the pendency issue in terms of the difference between approval of the consent decree and approval of the plan of reorganization, we do not decide whether some earlier event marked the end of pendency. Since the Supreme Court affirmed the decree on intervenor's appeal on February 28, 1983, still more than one year before Keystone commenced this action, we also do not consider the effect of an appeal on pendency.

**4.** Again, we need not evaluate the effect of the Supreme Court's affirmance. *See note 2, supra.*

antitrust action that had been terminated by entry and approval of a consent decree in the District of New Jersey in 1956. That case subsequently was transferred to the District of Columbia and consolidated with the 1974 action.

Judge Greene treated the stipulation of dismissal as a proposed consent decree subject to the public interest determination and approval provisions of the Tunney Act, 15 U.S.C. § 16(e), (f). *See United States v. American Telephone & Telegraph Co., supra,* 552 F.Supp. at 144–145 and n. 52. He ordered the dismissal lodged, but not filed, *id.* at 141, and, with the parties' consent, ordered the public hearings and comments required by the Tunney Act. *Id.* at 145. On August 24, 1982, the court approved the consent decree and ordered the action dismissed. 552 F.Supp. 131; 1982–3 Trade Cas. (CCH) ¶ 64,981.

As part of its approval, the court required the parties to include in the decree provisions empowering the court to review the plan of reorganization and to initiate enforcement proceedings *sua sponte. See* 552 F.Supp. at 216–19, 224–26, 232. After public hearings and comment on the plan of reorganization, on August 5, 1983, the court approved the plan of reorganization as consistent with the consent decree. 569 F.Supp. 1057.

The legislative intent behind a limitations toll determines its applicability. *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 426–27, 85 S.Ct. 1050, 1053–54, 13 L.Ed.2d 941 (1965). Congress enacted the one year pendency toll to enable private plaintiffs to use whatever benefits they could glean from government antitrust suits. *Minnesota Mining & Manufacturing Co. v. New Jersey Wood Finishing Co.,* 381 U.S. 311, 317–18, 85 S.Ct. 1473, 1053–54, 14 L.Ed.2d 405 (1965). Those benefits extend beyond the preclusive effect of a judgment; a private plaintiff may use evidence, pleadings, documents, and exhibits from the government action. *Id.* at 319, 85 S.Ct. at 1477. However, section 16(i) is also a statute of repose. *The Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S.

322, 334–335, 98 S.Ct. 2370, 2377, 57 L.Ed.2d 239 (1978). In particular, Congress sought to remedy confusion in computing the period of limitation, especially when the tolling provision was applied. *Id.* at 334, 98 S.Ct. at 2377. Thus, in *Greyhound,* the Supreme Court rejected a "functional-equivalence" standard that would treat a government petition to intervene as if it were a direct government action for purposes of triggering the tolling provisions because such a standard would "resurrect[ ] the very confusion and uncertainty concerning the application of the statute of limitations that Congress sought to eliminate in the 1955 amendments." *Id.* at 335, 98 S.Ct. at 2378.

The lower courts have applied the Clayton Act's tolling provision guided by this dual purpose of enabling private plaintiffs to benefit from government litigation and providing repose. In *Yoder Brothers, Inc. v. California-Florida Plant Corp.,* 537 F.2d 1347 (5th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977), the Fifth Circuit held that a government antitrust action ceases to pend on the date a consent decree is entered, not when the time allowed for appeal elapses. The court reasoned that since the scope of review of a consent decree is extremely narrow, private plaintiffs could rely safely on the decree's provisions in subsequent litigation. 537 F.2d at 1363. Treating entry of judgment as the termination of pendency would contribute to uniformity and certainty. *Id.* at 1362–63.

In *Sun Theatre Corp. v. RKO Radio Pictures, Inc.,* 213 F.2d 284 (7th Cir.1954), the Seventh Circuit held that pendency ends when a consent decree is entered, regardless of a retention of jurisdiction clause in the decree or subsequent modifying orders. The court noted that making the pendency toll coextensive with the power of a court to enforce its decree could suspend the statute of limitation indefinitely. *Id.* at 293. Once a decree is entered, litigants can use it as evidence. "The court's decree of injunction is no less final merely because from time to time expedit-

ing orders are necessary to effect is enforcement." *Id.*

*Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp.*, 194 F.2d 846 (8th Cir.), *cert. denied*, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348 (1952), is not to the contrary. There, the district court entered an "interlocutory consent decree." This decree

> certainly did not terminate the litigation and it was not intended as a final decree terminating the litigation. The consent decree entered in the Paramount case reserved to the United States the right at the end of a three year trial period to seek the relief prayed for in the amended complaint. At the end of the three year trial period the United States moved for trial against all the defendants.

194 F.2d at 857. Relying on the transitory nature of this particular decree, the court held that the government case continued to pend until the time for appeal expired. *See also Leonia Amusement Corp. v. Loew's Inc.*, 117 F.Supp. 747, 758-759 (S.D.N.Y. 1953) ("Mere reservation in a final decree of the right of either of the parties to apply for a modification required by changed conditions which make further operations under the decree as drawn, unjust or inequitable, does not change its final character."); *Electric Theater Co. v. Twentieth Century-Fox Film Corp., Inc.*, 113 F.Supp. 937, 944 (W.D.Mo.1953) (ordering a hearing on the nature of the consent decrees).

■ In the present case, private litigants could reap the full benefit intended by the tolling provisions as of the date of entry of the consent decree. Whether the judgment in the government litigation will have effect as *prima facie* evidence in private litigation, *see* 15 U.S.C. § 16(a), is uncertain. In the consent decree, the government and AT & T agreed that it would not, but Judge Greene recognized that this question is for courts handling subsequent litigation. *United States v. AT & T, supra*, 552 F.Supp. at 211. We need not decide this issue. Suffice it to say that any preclusive effect the prior litigation may have would derive from entry of the con-

sent decree. *See, e.g., Southern Pacific Communications Co. v. American Telephone & Telegraph Co.*, 740 F.2d 1011, 1022 (D.C.Cir.1984); *Cinema Service Corp. v. Twentieth Century-Fox Film Corp.*, 477 F.Supp. 174, 178 (W.D.Pa.1979). In addition, by the time the consent decree was entered, private litigants had full access to the evidence and the legal rulings developed in the government litigation. On February 17, 1982, by publication in the Federal Register, the Justice Department gave private litigants notice of how they could obtain trial record materials from *United States v. AT & T.* 47 Fed.Reg. 7170, 7180 n. 34. Judge Greene's ruling on AT & T's motion to dismiss at the end of the government's case, *see* 524 F.Supp. 1336 (1981), and his various pretrial rulings, *id.* at 1342 n. 3, also were available by the time the consent decree was entered. *See, e.g., KWF Industries, Inc. v. American Telephone & Telegraph Co.*, 592 F.Supp. 795, 797-98 (D.D.C.1984) (Court used Judge Greene's ruling that parties' stipulation of dismissal was really a consent decree subject to court approval to fix date pendency ceased at August 24, 1982 rather than at date stipulation was filed, January 8, 1982; consequently, court held that the private action before it was timely) and cases cited therein.

Keystone argues that the judgment as to remedy did not become final until Judge Greene approved the plan of reorganization on August 5, 1983. Using language from Judge Greene's opinions, Keystone contends that the consent decree established only "general principles and objectives." 552 F.Sup. at 224. The plan of reorganization "fill[ed] in the decree's many interstices and ... prescribe[d] the exact method by which divestiture was to be accomplished." 569 F.Supp. at 1120. Keystone relies on the reasoning of *Russ Togs, Inc. v. Grinnell Corp.*, 426 F.2d 850 (2d Cir.), *cert. denied*, 400 U.S. 878, 91 S.Ct. 119, 27 L.Ed.2d 115 (1970), to support the assertion that a final judgment determining all issues of liability and relief did not issue and pendency did not cease until the plan of reorganization was approved.

Judge Greene's opinions do not indicate that the August 28, 1982, judgment lacked the finality or definition that would make it useful to future litigants. His language is clear: on August 24, 1982, he approved the stipulation of dismissal and "ORDERED that Civil Action No. 74–1698 be and it is hereby dismissed." 1982–2 Trade Cas. (CCH) ¶ 64,981. Judge Greene limited his review of the plan of reorganization to ensuring that it complied with the consent decree. *See* 569 F.Supp. at 992–93, 1120 n. 286; 552 F.Supp. at 219 n. 366, 225–226.

In *Russ Togs, supra,* 426 F.2d 850, the district court in the government action had entered a decree after trial, *United States v. Grinnell Corp.,* 236 F.Supp. 244 (D.R.I. 1964), but on appeal the Supreme Court found the relief granted inadequate and remanded the case for hearings on relief. *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). In the subsequent private action, the Second Circuit held that the government action ceased to pend when the time to appeal the district court's final decree after remand expired. The Court noted that important issues had been left open for determination on remand. 426 F.2d at 856. The remand proceeding and the appeal from it could generate evidence and legal rulings useful to prospective plaintiffs. *Id.*

In the circumstances of this case, *Russ Togs* does not support Keystone's position. *Russ Togs'* rationale does not apply when the parties have entered a consent decree. Under the narrow scope of appellate review of a consent decree, private parties can rely safely on its provisions. *Yoder, supra,* 537 F.2d at 1363; *Shimazaki, supra,* at 13–14. Further, the *Russ Togs* court refused to extend pendency to include "the period subsequent to a final decree during which the court exercises continuing jurisdiction for purposes of modification and enforcement under the usual retention of jurisdiction clause." 426 F.2d at 856 n. 8; *see Yoder, supra,* 537 F.2d at 1363. Judge Greene's review and approval of the plan of reorganization was just such an exercise of continuing jurisdiction.

Fixing termination of pendency at the date Judge Greene approved the consent decree and ordered the government case dismissed promotes certainty and repose. In contrast, Keystone's argument that pendency continued until Judge Greene finalized relief in his approval of the plan of reorganization admits of no limitation, for some aspects of the remedy invariably will require further elaboration. *See Sun Theatre, supra,* 213 F.2d at 293. A court retains power indefinitely to modify and enforce its equitable decrees. *United States v. Swift & Co.,* 286 U.S. 106, 114–115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). Antitrust decrees may generate enforcement or clarification proceedings decades later. *E.g., United States v. Armour & Co.,* 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971) (action to clarify and enforce consent decree entered in 1920). In fact, as recently as January of this year, Judge Greene adjudicated motions to clarify his decree. *United States v. Western Electric Co.,* 627 F.Supp. 1090 (D.D.C.1986).

### III. *New Overt Acts*

Keystone's assertion that new overt acts causing it antitrust injury occurred within the limitations period requires us first to examine the standards for summary judgment, particularly in an antitrust case.

Summary judgment is proper when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). When motive and intent are not at issue, summary judgment "is particularly apropos in antitrust cases." *Mid-South Grizzlies v. National Football League,* 550 F.Supp. 558, 564 (E.D.Pa. 1982), *aff'd,* 720 F.2d 772 (3d Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984); *see Lupia v. Stella D'Oro Biscuit Co., Inc.,* 586 F.2d 1163, 1166 (7th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1791, 60 L.Ed.2d 242 (1979). Once the movant has met its burden of demonstrating the absence of a genuine

issue of material fact, the non-movant must come forward with evidentiary materials to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). We hold that Keystone has failed to raise a genuine issue as to whether it suffered new antitrust injury within the limitations period.

■ An antitrust cause of action "accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). A new cause of action accrues each time defendants commit a new act that injures the plaintiff. *Id.* However, "where all the damages complained of necessarily result from a pre-limitations act by defendant, no new cause of action accrues for any subsequent act committed by defendant within the limitations period *because those acts do not injure plaintiff.*" *Imperial Point Colonnades Condominium, Inc. v. Manngurian,* 549 F.2d 1029, 1035 (5th Cir.1977), *cert. denied,* 434 U.S. 859, 98 S.Ct. 185, 54 L.Ed.2d 132 (1978); *see also The Poster Exchange, Inc. v. National Screen Service Corp.,* 517 F.2d 117, 126–127 (5th Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976). The Third Circuit adopted the Fifth Circuit's position in *Harold Friedman, Inc. v. Thorofare Markets Inc.,* 587 F.2d 127, 139–140 & nn. 44–45 (1978).

■ Applying these rules to the facts before us, we find that defendants have shown, beyond dispute, that their pre-limitations acts immediately and permanently destroyed Keystone's telecommunications scrap recycling business so that defendants' post–1980 acts did not inflict any new injury on Keystone.

Keystone had an agreement with Nassau that Keystone would process only Nassau scrap. (Kann Dep. 243, 302; Beck Dep. 89). During its relationship with Nassau, Keystone never bid on any other telecommunications scrap contracts. (Kann Dep. 187, 198; Beck Dep. 89). Keystone had geared its operations toward processing a large, steady flow of scrap from Nassau. (Kann Dep. 189). Once that flow stopped, Keystone could not sustain its business by bringing in small consignments of scrap from several suppliers. (*Id.*) Consequently, Keystone converted its Greensboro, Georgia, and Mars, Pennsylvania, plants to aluminum and zinc smelting (Kann Dep. 138–143) and closed its Newark plant. Keystone never bid on any of the scrap made available by the BOCs. (Kann Dep. 140–41; Kann Dep. 187–91, 198; Beck Dep. 101; Answer of Plaintiff Keystone Resources to Defendants' Motion to Dismiss, pp. 8–10, and attached Reese affidavit). Nassau clearly had put Keystone out of the telecommunications scrap business by the end of 1979.

Keystone argues that the BOCs offered scrap for competitive bidding after 1978. However, Nassau continued to obtain a large quantity of scrap from the BOCs on no-bid contracts at a low price, enabling it to outbid possible competitors on the open contracts. (Answer of Plaintiff Keystone Resources to Defendants' Motion to Dismiss, p. 9; Buerger Affidavit in Opposition to Motion to Dismiss). Keystone asserts that it wished to bid on these post–1980 contracts, but defendants' continuing conspiracy, not any pre–1980 acts, prevented Keystone from bidding. (Answer to defendants' motion to dismiss, p. 9).

These conclusory allegations miss the point of defendants' motion for summary judgment. Keystone's affidavits indicate only that defendants' vertical integration continued after 1980. At issue, however, is not the continuation of defendants' allegedly illegal conspiracy, but causation. Keystone has not produced any specific facts to controvert defendants' showing that Keystone suffered final injury before 1980. Keystone does not point to any "specific act or word" of defendants precluding it from obtaining contracts. *See The Poster Exchange, supra,* 517 F.2d at 128–129, *on appeal after remand,* 542 F.2d 255, 257 (1976) (granting defendants' summary

judgment motion after remand because plaintiff failed to produce affidavits showing a specific act denying access to market), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1697, 52 L.Ed.2d 388 (1977); *Woodbridge Plastics, Inc. v. Borden, Inc.,* 473 F.Supp. 218, 221–222 (S.D.N.Y) (where no new requests or refusals to deal within the limitations period, no new causes of action accrued), *aff'd,* 614 F.2d 1293 (2d Cir.1979).[5]

### IV. *Conclusion*

For the reasons set forth above, we hold that the government litigation against AT & T ceased to pend on August 24, 1982, more than one year before Keystone commenced this action. We further hold that Keystone did not suffer any new antitrust injury at the hands of the defendants within the limitations period. Therefore, Keystone did not bring this action before the four year statute of limitations or the one year suspension toll expired, and defendants' motion for summary judgment will be granted.

Defendants have not moved for summary judgment on Keystone's claim, in paragraph seventeen of its amended complaint, for nonpayment of a debt. Diversity jurisdiction exists for that claim, and we pretermit decision on it.

An appropriate order will follow.

---

**5.** Keystone does not claim that its damages could not be ascertained during the limitations period. *See* Plaintiff's Supplement to Its Answers to Interrogatories Pursuant to Rule 26(e).